No. 33,802

CLARENCE NAUMAN, *Appellee,* v. J. F. POWERS, *Appellant.*

(78 P. 2d 27)

Opinion filed April 9, 1938.

*Walter Pleasant* and *James D. Dye,* both of Ottawa, for the appellant.
*Wilbur S. Jenks,* of Ottawa, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an appeal by defendant from an order overruling his demurrer to plaintiff's petition, the pertinent portions of which may be stated or summarized as follows:

That on July 10, 1937, plaintiff entered into a verbal contract with defendant to purchase all of the merchantable walnut timber standing upon a certain tract of ground just south of and near the south line of the town of Centropolis, Franklin county, Kansas,

which land was commonly known as "Powers' Grove," and which land the defendant claimed to own; that defendant then agreed to sell all of such walnut timber to plaintiff for the sum of $1,500, of which $100 was to be paid on that day and the balance not later than October 1, 1937, and the parties executed the following instrument:

"Contract for sale of walnut timber from J. F. Powers to Clarence Nauman, whereby J. F. Powers agrees to sell all merchantable walnut timber located near Centropolis, Kansas, to Clarence Nauman for the sum of $1,500 (fifteen hundred dollars), $100 to be paid July 10, 1937, and the balance to be paid not later than October 1, 1937. It is also agreed that no timber is to be cut until fully paid for."

This was dated July 10, 1937, was signed by the parties, and witnessed. That on the same date, and as a part of the same transaction, plaintiff executed and delivered to defendant his check for the $100 to be paid that day, upon which check these words were written: "For first payment on all walnut timber in his grove South Centropolis, Kansas." It is alleged that at the time the parties did not know the exact legal description of the land on which the walnut timber was located, but that it was definitely pointed out and understood by the parties. That thereafter defendant entered into negotiations with another dealer in walnut timber, and as plaintiff is informed, secured a somewhat better offer; that between July 10 and August 3, 1937, there had been an increase in the market price of such timber, and that on August 3, 1937, defendant wrote plaintiff a letter, the pertinent portions of which are as follows:

"After due consideration I find it impossible to fulfill the contract for the sale of walnut timber to you. You will note the contract states I am to sell you all merchantable walnut timber located near Centropolis. I do not own all the merchantable walnut timber located near Centropolis. Therefore I cannot comply with the contract, hence I am asking you to cancel said contract, and I am return— you your check by this mail, as I have not cashed it.

"I state, further, that the walnut timber that I laid any claim to was owned jointly by Mrs. Powers and myself and she refuses to sell at this time, hence places me in an embarrassing position. (See recorded deed.) That farm in sec. (3) original deed from Mrs. Earls, to J. F. and Catharine B. Powers. I state further that Mrs. Powers furnished part of the money to buy all of the farm land and therefore to satisfy her claim I have given her a quitclaim deed to all of it."

Plaintiff received this letter, with the check which he had delivered to defendant July 10 enclosed. Thereupon plaintiff brought

this action for damages for the breach of their agreement by defendant.

Appellant first contends the standing timber is real estate, and that is conceded.

Appellant next contends that the memorandum of the agreement executed by the parties is so indefinite and uncertain as regards the description of the property sold that an action cannot be maintained upon it under our statute (G. S. 1935, 33-106), which, so far as here pertinent, reads:

"No action shall be brought whereby to charge a party upon . . . any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Appellant cites *Reid v. Kenworthy*, 25 Kan. 701; *Fry v. Platt*, 32 Kan. 62, 3 Pac. 781; *Wing v. Mollett*, 115 Kan. 116, 222 Pac. 88; 27 C. J. 269, and other authorities, to the effect that the memorandum to be within the statute must state the contract between the parties with reasonable certainty, so that it can be understood from the writing itself, or by reference to some extrinsic instrument, without having recourse to parol proof. It is conceded that under our former decisions, if the land had been referred to in the memorandum as the "Powers' Grove" (*Hollis v. Burgess*, 37 Kan. 487, 494, 15 Pac. 536), or as "the land owned by defendant," or as "his land near Centropolis," it would have been a sufficient memorandum under the statute. (*Hampe v. Sage*, 82 Kan. 728, 109 Pac. 406; 87 Kan. 536, 125 Pac. 53.) From the petition it is clear that on the same day the memorandum denominated "Contract for sale of walnut timber" was executed, and as a part of the same transaction, plaintiff executed and delivered to defendant his check for $100, which the memorandum recites was to be paid that day. This check was made payable to defendant and recites that it is the first payment on all walnut timber "in his grove south [of] Centropolis." It is well settled that the memorandum, to be sufficient under the statute, may consist of two or more papers, and it is not essential that each of them be signed by the party to be charged, if the one signed refers to the other. (Restatement, Contracts, § 208 [b] [ii].) This is in accord with the authorities relied upon by appellant, above cited. There are many other authorities to the same effect.

By signing the contract for the sale of walnut timber near Centropolis, Powers represented that he owned walnut timber so situated. Hence, standing alone, that contract would seem to be sufficient under the statute, upon the authority of Restatement, Contracts, § 207, clause (b), comment 9. See, also, to the same effect, 2 Williston on Contracts, revised ed., § 578. In any event, the memorandum on the check executed by plaintiff and delivered to defendant on the same day, and as a part of the same transaction, made sufficiently definite the location of the walnut timber sold.

The location of the walnut timber sold was also made definite by defendant's letter to plaintiff of August 3, 1937, particularly in the second paragraph, quoted above. The question whether a letter written by one of the parties to be bound by the agreement makes definite that which was indefinite in the previous writing has been considered by the courts. Earlier English authorities are collected in *Bailey v. Sweeting*, 9 C. B. R. (J. Scott, N. S.) (1861) 842. From these the rule developed may be fairly stated to be that if the letter in question, in some part of it, repudiates the contract, other things contained in the letter will not be regarded as perfecting it, for it has to be construed as a whole. However, if the letter does not repudiate the contract, and does contain matter which makes definite that which previously was indefinite, and is signed by a party to be bound, it will be regarded as a part of the memorandum for the purpose of determining if it is sufficient under the statute. (See, also, 2 Williston on Contracts, revised ed., § 584.) Examining this letter, we find no repudiation of the contract. The first sentence of it concedes that a contract had been made. The writer simply declined to attempt to comply with it, for reasons stated, and in the next paragraph makes definite the location of the walnut trees he agreed to sell.

The demurrer to the petition was properly overruled. The judgment of the court below is affirmed.