REITA R. FREEDMAN & another vs. JOHN J. WALSH, JUNIOR,
& others, trustees
(and a companion case[1]).

Suffolk.    March 3, 1954. — May 6, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Frauds, Statute of.  Contract, For sale of real estate.  Auction.  Equity
Jurisdiction, Specific performance.  Equity Pleading and Practice,
Stipulation, Rehearing.*

A memorandum given by the auctioneer to the successful bidder at an
auction sale of land, although it described the land merely as "lot
#s 1719 and 1721," was not thereby insufficient in stating the oral
contract of sale for the purposes of the statute of frauds where the
seller owned only one parcel of land answering such description.
[402]

This court was not bound by a stipulation of the parties limiting the
issues in a suit in equity where it appeared that the stipulation had
been made inadvertently and did not tend to promote justice.  [403]

A suit in equity for specific performance of a contract for the sale of land
requiring the defendant seller to convey a good title free of encum-
brances must be remanded to the trial court for further hearing in the
circumstances where it appeared that an appropriate decree could not
be framed until there had been a determination of claims affecting the
land by third persons who had unsuccessfully sought to intervene to
assert their claims and who were not bound by the findings made.  [406]

Two BILLS IN EQUITY, filed in the Superior Court on
May 26, 1952, and May 22, 1953, respectively.

The suits were heard by *Morton*, J.

*Sidney Weinberg*, for the plaintiffs.

*Timothy H. Donohue*, (*Thomas J. Carens* with him,) for
the defendants.

RONAN, J.    These are two bills in equity brought by
purchasers of various parcels of land at public auctions on
June 29, 1949, seeking specific performance or, in the al-

[1] The companion case is by Hyman Chaskelson and another against the
same defendants.

ternative, that damages be awarded or that the deposits paid at the time of the auctions be returned. The plaintiffs appealed from final decrees dismissing the bills.

The defendants, the trustees under the will of John J. Moore, employed an auctioneer to sell a parcel of land consisting of five lots. The auctions were held on the premises. Each lot had been staked out by the auctioneer and numbered with a tag. Sketches of the lots were shown to the bidders before the auctions and also a plan showing the lots and the number of each lot. The lots were numbered according to the numbers shown on the sketches and the plan. Each lot was sold separately. Each successful bidder paid a deposit to the auctioneer and received from him a memorandum. These memoranda were substantially similar differing only in details as to the names of purchasers, lot numbers, and prices. The memorandum given to the plaintiff Freedman will serve as a sample. It read as follows: "6–29–49. Received of Reita R. Freedman, the sum of $250.00 (two hundred and fifty) as deposit on lot #s 1719 and 1721. Balance of $1000.00 to be paid within thirty days of above date. 1949 taxes to be apportioned as of date of passing of papers. Signed: James A. Magner Auctioneer." It was not necessary to state the name of the town in which each lot was located. The trustees owned no other land answering the description and no other lots so numbered. The memorandum stated all the essentials of the oral contract of sale. The memorandum complied with the statute of frauds. G. L. (Ter. Ed.) c. 259, § 1, Fourth. *Epdee Corp.* v. *Richmond,* 321 Mass. 673, 675, and cases cited. *Rix* v. *Dooley,* 322 Mass. 303, 307.

The judge in his report of the material facts stated that if the statute of frauds was not a defence specific performance should be ordered. The parties stipulated that, if the suits were not barred by that statute, the only remaining issue is whether the judge should have entered decrees for specific performance which should provide "for the payment by the respondents of any and all outstanding rights of redemption for the taxes paid by the heirs of Albert W.

Moore." Specific performance is not strictly a matter of right, and the conditions upon which it should be granted depend to a certain extent upon the sound discretion of the court. We are not bound by a stipulation, limited to one aspect of a single issue which is intrinsically interwoven with other matters, which appears to have been inadvertently made and which does not tend to promote justice. *Malone* v. *Bianchi*, 318 Mass. 179, 182–183. *Loring* v. *Mercier*, 318 Mass. 599, 601. *Derderian* v. *Union Market National Bank*, 326 Mass. 538, 539–540.

The trustees undertook by their oral contract evidenced by the memorandum, as commonly interpreted, to convey the land by "a good title free of encumbrances upon payment of the price in cash within a reasonable time." *Epdee Corp.* v. *Richmond*, 321 Mass. 673, 675. *Shayeb* v. *Holland*, 321 Mass. 429, 431. A decree for specific performance should not be entered if it appears that the defendants cannot transfer such a title, unless, of course, the plaintiffs are willing to accept as full performance whatever title the defendants can convey, *Hawksley* v. *Outram*, [1892] 3 Ch. 359, 376, *Eliopoulos* v. *Makros*, 322 Mass. 485, 489 — which the evidence shows they will not do — or unless they elect to take conveyance with a deduction in the purchase price because of any defect in the title. *Brookings* v. *Cooper*, 256 Mass. 121, 123–124. *Parkhurst* v. *Maynard*, 285 Mass. 59, 63. *Segal* v. *Prior*, 329 Mass. 504, 508. *Margolis* v. *Tarutz*, 265 Mass. 540, 544. At the close of their evidence, the plaintiffs stated that they were willing to accept conveyances "with or without deductions for these back taxes." The taxes referred to were those which had been paid by the heirs of Albert W. Moore as will presently appear. They did not suggest that they would accept whatever title the trustees could convey with a deduction in the purchase price on account of any adverse claims the heirs of Albert might have in the lots. The judge and the trustees do not appear to have paid any attention to this statement of the plaintiffs probably because the claims of the heirs of Albert were apparently not limited to the matter of unpaid

taxes. Indeed, the trustees have never taken the position that they could convey the lots free and clear of encumbrances; neither have they at any time taken a definite position as to the validity of any particular claim advanced by the heirs of Albert.

All taxes for the years subsequent to the death of John J. Moore had been paid by the trustees, but shortly after the auctions they discovered that the record title to the lots since 1929 had stood in the name of Albert W. Moore, the son of John J. Moore. Albert died intestate in 1938 and the record title apparently continued in his name until November 28, 1951. The trustees refused to pay any more taxes. The land was sold by the town for the nonpayment of the 1949 tax to Cadros Realty Corporation. In August, 1951, the heirs of Albert purchased the tax title from the corporation paying it $588.34[1] for the 1949 tax title and the 1950 tax which had been certified to the corporation on the tax account. The heirs at about the same time paid the 1951 tax amounting to $281.34. There was evidence that the heirs of Albert refused to reimburse the trustees for taxes paid by them in the previous years under the mistaken belief that the property was owned by the testator who died in 1945.

The testator conveyed the premises to Albert on August 1, 1929. Albert mortgaged the property to a bank. The testator indorsed the mortgage note. All the payments on the note were made by the testator until his death and then by the trustees. The mortgage was discharged prior to the auctions but the discharge has not been recorded. The trustees in November, 1951, discovered a deed executed by Albert dated August 1, 1929, reconveying the property to his father. This deed was recorded on November 28, 1951. The trustees then resumed paying the taxes on the land. The heirs of Albert refused the request of the trustees to release to them any interest they had in the land unless the proceeds of the sales to the plaintiffs

---

[1] This amount is also stated to be $538.84. It is immaterial which sum is correct.

were turned over to them. Some months before the hearing, the heirs had brought a petition to intervene for the purpose of removing a cloud upon their title based on the ground that they owned the premises. The petition does not set forth the specific grounds upon which they assert ownership. For reasons not appearing upon the record this petition was denied. At the hearing on the merits the judge found that Albert was a straw for his father.

The trustees introduced no evidence at the hearing on these bills. It appeared, however, that they had held numerous conferences with attorneys for the plaintiffs and with some of the plaintiffs themselves, but they did little to clear up the title. Both sides were familiar with the situation relating to the title soon after the auctions. The offer of the trustees to give the plaintiffs certificates as provided for by G. L. (Ter. Ed.) c. 60, § 23, as amended, together with deeds of the lots was rejected. Such certificate merely indicated that certain taxes had been paid. There was no dispute that they had been paid by the trustees and, for the three years mentioned, by the heirs of Albert. The certificate did not affect the alleged adverse claim by the heirs. Whether the trustees could give a title free from encumbrances depended upon the validity of the claim of these heirs in the land. If they had an interest in the land at the time of the tax sale, they had a standing to redeem the land by virtue of G. L. (Ter. Ed.) c. 60, § 62, as amended, which gives a right of redemption to any person having an interest in land taken or sold for nonpayment of taxes. If they actually owned the land, the payment to redeem the land was in effect the discharge of a lien upon their land. On the other hand, if previous to acquiring the tax title from Cadros Realty Corporation the heirs of Albert had no interest in the land, their purchase of the tax title gave them a tax title which they hold merely as security until the rights of the owner to redeem are terminated. G. L. (Ter. Ed.) c. 60, §§ 64, 65. No proceedings under these sections have been held.

We do not agree with the contention of one of the trustees

that the tax title acquired by Cadros Realty Corporation was of no force and effect because at the time of the assessment the record title was in the name of Albert. The tax was properly assessed to Albert, the record owner. G. L. (Ter. Ed.) c. 59, § 11, as amended. The case is plainly distinguishable from *Stone* v. *New England Box Co.* 216 Mass. 8, 10–11, where an assessment to one who never owned or possessed the land was held to be void.

Specific performance is not a matter of absolute right. It ought not to be granted if it will result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage. On the other hand, agreements are made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so. Whether the trustees are able to convey a title free and clear of encumbrances requires a full examination into the nature and character of whatever claims the heirs of Albert have in the lots which they attempted to assert in their petition to intervene. Appropriate decrees cannot be framed in these suits until those claims have been determined. The finding that Albert was a straw for his father does not bind the heirs. They were not parties to these suits. The facts in the first instance should be found by the judge who has seen and heard the witnesses and not by a court which must depend entirely upon a printed record. *Olszewski* v. *Sardynski*, 316 Mass. 715, 718. The final decrees must be reversed and the suits remanded to the Superior Court for further hearings. *Jeffries* v. *Jeffries*, 117 Mass. 184. *Hunting* v. *Damon*, 160 Mass. 441. *Daniell* v. *Shaw*, 166 Mass. 582. *Loring* v. *Whitney*, 167 Mass. 550. *Cawley* v. *Jean*, 189 Mass. 220, 227. *Morse* v. *Stober*, 233 Mass. 223. *Flier* v. *Rubin*, 321 Mass. 464, 468.

*So ordered.*