Ozzie CLAY, Appellant,

v.

Alton HANSON, Appellee.

No. 85–1741.

District of Columbia Court of Appeals.

Argued Nov. 17, 1987.
Decided Jan. 29, 1988.

---

Ronald A. Goodbread, Washington, D.C., for appellant.

Jeffry A. Kappstatter, Washington, D.C., for appellee.

Before MACK, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Ozzie Clay appeals the grant of a motion for summary judgment on his complaint for damages and specific performance of a contract for the sale of 2812 Chesterfield Place, N.W. with appellee Alton Hanson.[1] Hanson defends this judgment on the grounds that Clay failed to comply with the rules for summary judgment, the agreement did not satisfy the statute of frauds, and any agreement with Clay is subordinate to a subsequent contract with the tenants. We agree that Clay has failed to meet the requirements of the statute of frauds. Although a memorandum of contract can consist of several documents, and Hanson admitted entering into an agreement to sell real property to Clay, Clay has failed to raise a material issue of disputed fact whereby he can rely on his subsequent letter to Hanson to identify the contours of that property. Accordingly, we affirm.

**I**

On May 3, 1984, after substantial negotiations, Hanson gave Clay a handwritten memorandum which read:

MAY 3, 1984

I have agreed in principal [sic], subject to satisfactory terms, [to] the sale of 2812 Chesterfield Place N.W. for a full cash price of $667,500.*

/s/ Alden W. Hanson

* Terms to be decided within 5 days or agreement is null & void.

/s/ Alden W. Hanson

---

1. Apparently Mr. Hanson's actual first name is "Alden," although the complaint was styled with, and Hanson's brief in this court uses, the first name of "Alton."

The writing was signed by Hanson in two places, but it contained neither Clay's name nor his signature. Hanson owned both lot no. 50, on which the premises of 2812 Chesterfield Place is located, and lot no. 49, an unimproved adjoining lot.

Ten months later, on March 27, 1985, Hanson entered a contract of sale with the tenants of 2812 Chesterfield Place, N.W. The price was set at $625,000 cash, to be paid on the closing date, and the tenants were given an option to purchase the adjoining lot for $200,000. Clay admitted that he was aware of the District of Columbia law concerning a tenant's right of first refusal, and, according to Hanson, "Clay was fully appraised [sic] that the tenants had an option to purchase the property to which any agreement with him would be subordinate." The pleadings and supporting materials do not reveal whether Clay had any knowledge about actual negotiations with the tenants or their contract of sale until Hanson so informed him on or about May 2, 1985.

On June 18, 1985, Clay filed the instant action for damages and specific performance with respect to the property at 2812 Chesterfield Place, alleged to consist of both lots no. 49 and 50, and the improvements thereon. Hanson responded on the same day with a motion to dismiss for failure to state a claim or, alternatively, for summary judgment. The motion was accompanied by a supporting memorandum of points and authorities, a SUPER.CT.CIV.R. 12–I(k) statement of material facts not in dispute, Hanson's affidavit and a copy of the tenants' contract of sale. Hanson maintained in his motion that the May 3 memorandum did not constitute a contract of sale because it was insufficient to satisfy the statute of frauds, D.C.CODE § 28–3502 (1981), that any assumed contract expired by its own terms as of May 8, 1984 because of Clay's failure to seek a closing, and that "as the sole contract of sale is with the tenant of the property, the rights of [Clay] are subordinate to the tenants under the rental Housing Sales and Conversion Act of 1980 (D.C.Law 3–86)." See D.C.CODE §§ 45–1631 through 1638 (1981).

In addition, Hanson deposed Clay on June 27, 1985. This deposition established that Clay was experienced in real estate development and had negotiated with Hanson for the sale of 2812 Chesterfield Place for several years prior to 1984. Some time before 1984, Clay tendered an earnest money check for $25,000 either to Hanson or to his broker, but this check was never negotiated and was subsequently voided by Clay. The first and only writing signed by Hanson was dated and personally delivered to Clay on May 3, 1984, at which time Hanson tendered a $25,000 note payable upon execution of the contract. Clay stated that, pursuant to the May 3 writing, he and Hanson reached agreement on terms of the sale during a telephone conversation on May 7, 1984, and introduced into evidence a confirmation letter he wrote to Hanson that same day. The May 7 letter stated that Hanson had agreed to sell both lots no. 49 and 50 for $667,500, and had approved two alternative financing arrangements. The letter also stated that upon Hanson's return in two weeks from a trip, they would meet to set a time for settlement. Clay also stated that, at one point, Hanson told him the tenants would move out in November, 1984, and that he, Clay, called for settlement at that time, stating that time was of the essence because his wife was dying of cancer. Clay also stated, however, that "there was no contingency based on the tenant moving out of the property."

On August 15, 1985, Clay filed an opposition to Hanson's motion to dismiss or for summary judgment on the ground that "writings exists [sic] that all material and definite terms relating to certain real property and improvements were agreed upon between the parties" and that, under the statute of frauds, "an enforceable contract may exist or arise pursuant to a number or collection of different documents, which are internally consistent and which, all when taken together, set forth the material terms of the contract." Attached to his opposition is a copy of his May 7, 1984 letter to Hanson which purports to set forth the terms the parties agreed to in

their telephone conversation. Contrary to Rule 12–I(k), Clay did not file a statement of material facts in dispute containing references to the record or an affidavit; his complaint is unsworn.[1A]

A hearing was held on September 3, 1985. Clay argued, relying on his deposition of June 7, 1985, that both the May 3 memorandum and the May 7 letter satisfied the statute of frauds. Hanson argued that the statute of frauds had not been satisfied because the May 3 memorandum failed to identify Clay as the buyer and did not contain an adequate description of the property since lot no. 49, which Clay sought in his complaint, was not part of 2812 Chesterfield Place. After review of the record, the motions judge granted summary judgment to Hanson and dismissed Clay's complaint with prejudice.

**II**

Clay contends that the May 3, 1984, handwritten memorandum, whether taken alone or in conjunction with his May 7, 1984, letter, satisfies the statute of frauds, D.C.CODE § 28–3502. Hanson responds that the May 3 writing lacks two essential terms required under the statute, namely, the identification of the buyer and an adequate description of the property.[2] *See*

*Ochs v. Weil*, 79 U.S.App.D.C. 84, 86, 142 F.2d 758, 760 (1944) ("sufficient description of the thing sold, the price to be paid, and the names of the party selling and the party buying"). We agree that the May 3 memorandum does not sufficiently describe the property to satisfy the statute of frauds and that Clay may not rely on his May 7 letter to cure the deficiency.[3]

■ The statute of frauds, D.C.CODE § 28–3502, provides than an action respecting the sale of real estate may not be brought "unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration *and signed by the party to be charged therewith* or a person authorized by him." (Emphasis supplied). The memorandum need not be one piece of paper, however, as "[t]he memorandum may consist of several writings if one of the writings is signed and the writings in the circumstances clearly indicate that they relate to the same transaction." RESTATEMENT (SECOND) OF CONTRACTS § 132 (1981). A memorandum of a contract may consist of several documents, even though

> not all of them are signed and even though no one of them is itself a sufficient memorandum. At least one must

**1A.** Clay was represented in the trial court by counsel other than his counsel in this appeal.

**2.** Hanson further contends that time was of the essence and was a material term because of the provision in the May 3 memorandum stating that the agreement would be null and void if adequate terms were not decided within five days. *See Siegel v. Banker*, 486 A.2d 1163, 1165 (D.C.1984) (per curiam). This contention is irrelevant, however, because Clay does not seek to amend the time within which the terms were to be agreed; he claims that the parties orally agreed on the payment terms before May 8 and that the agreement was memorialized in the May 7 letter.

**3.** Hanson's first contention is that the judgment should be affirmed because Clay's opposition to his motion was untimely filed and did not contain a Rule 12–I(k) statement of material facts in dispute. The motions judge's order is silent as to the grounds upon which the complaint was dismissed. *See* SUPER.CT.CIV.R. 52. Because the parties presented materials beyond the pleadings which were not excluded by the motions judge, Hanson's motion to dismiss under SUPER. CT.CIV.R. 12(b)(6) must be treated as one for summary judgment, *Bernay v. Sales*, 435 A.2d

398, 401 (D.C.1981) (per curiam), and this court must apply the same standards as the trial court in reviewing a motion for summary judgment. *Spellman v. American Security Bank*, 504 A.2d 1119, 1122 (D.C.1986) (per curiam).

Other than the representations at the hearing, Hanson has failed to provide this court with record evidence with respect to Clay's motion to enlarge time. *See Dulles v. Dulles*, 302 A.2d 59, 60 (D.C.1973) (per curiam). Moreover, a failure to raise an issue properly in response to a motion for summary judgment is not in itself fatal because the court is required to determine whether the movant is entitled to judgment as a matter of law. *Woodruff v. McConkey*, 524 A.2d 722, 725 (D.C.1987); *Williams v. Gerstenfeld*, 514 A.2d 1172, 1176–77 (D.C.1986); *Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington*, 512 A.2d 299, 300 (D.C.1986). In any event, regarding Clay's failure to file a proper Rule 12–I(k) statement of material facts in dispute, Clay did file an opposition that contested certain material facts and attached a letter, which was in evidence at his deposition, upon which he relied to satisfy the statute of frauds. *See Thompson v. Seton Investments*, 533 A.2d 1255, 1257–1258 (D.C.1987).

be signed by the party to be charged, and the documents and circumstances must be such that the documents can be read together as "some memorandum or note" of the agreement. Explicit incorporation by reference is unnecessary, but if the connection depends on evidence outside the writings, the evidence of connection must be clear and convincing.

RESTATEMENT (SECOND) OF CONTRACTS § 132 comment a (1981).

Thus, in *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953), plaintiff accepted an offer of employment in a telephone conversation with the defendant corporation's president which was evidenced only by an unsigned office memorandum. When plaintiff reported to work, a payroll change card was drawn up and initialed by the corporation's general manager. A similar card was signed by the corporation's comptroller six months later. The court held that the earlier unsigned writing could be read together with the two subsequent signed writings to satisfy the statute of frauds, provided that they clearly referred to the same subject matter or transaction. 305 N.Y. at 56–57, 110 N.E.2d at 554–55. Similarly, in *Nauman v. Powers*, 147 Kan. 641, 78 P.2d 27 (1938), a letter and notations on a check signed by defendant subsequent to an insufficiently definite land sale contract could be read together with the earlier contract to supply the ambiguous term. 147 Kan. at ——, 78 P.2d at 30.

■ The doctrine that a sufficient memorandum may be pieced together out of separate writings is inapposite, however, to the instant case. While the initial writings in *Crabtree* and *Nauman, supra,* were insufficient to satisfy the statute of frauds, some later documents signed by the party to be charged were introduced which, when read together with the earlier writings, supplied the missing or ambiguous terms. Here, the converse is true. There are only two documents: a May 3 memorandum signed by Hanson, and a May 7 letter signed by Clay. Clay cannot rely on his May 7 letter to satisfy the statute of frauds because that letter was written by him, after the May 3 memorandum, and was neither signed by Hanson nor effectively incorporated by the May 3 memorandum. This situation falls precisely within a scenario anticipated by Professor Williston:

A writes a letter to B, saying: "I will sell you the property of which we spoke yesterday for $5,000 cash." B replies: "I understand that you will sell me the following described property of which we spoke yesterday (describing the property) at $5,000 cash. I hereby accept your proposition." According to the doctrine here criticized B's reply could be read with A's letter to charge A; they evidently refer to the same transaction, and the description of the property contained in B's letter could be incorporated in A's writing. But it is obvious that A has never authenticated the description by his signature, and *to allow the description written by B to be used by B in enforcing the contract against A, is nothing other than to allow B to write an essential term of the memorandum himself and charge A with it as written.*

\* \* \* \* \* \*

It is essential to examine specifically the papers not signed by the parties to be charged, which it is sought to incorporate with the paper or papers that are so signed, and determine whether the unsigned papers have been adopted by the signed papers.

4 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 582, at 141–42 (3d ed. 1961) (emphasis supplied; footnotes omitted). Since there is no reference in the earlier May 3 memorandum to any other writing, or any other written evidence of Hanson's adoption of Clay's May 7 letter, Clay cannot thereby unilaterally deprive Hanson of the protection provided by the statute of frauds.

■ Thus, in order to satisfy the statute of frauds, Clay must rely exclusively on the May 3 memorandum signed by Hanson. In a contract for the sale of land, the statute of frauds serves both the evidentiary function of proving the existence of the contract and the channeling function of

providing a simple test of enforceability. RESTATEMENT (SECOND) OF CONTRACTS, statutory note preceding § 110 (1981). As to the evidentiary function, it is well established in this jurisdiction that the defendant waives his right to assert a statute of frauds objection by admitting the existence of a contract or its material terms through oral or written testimony. *Hackney v. Morelite Construction Corp.*, 418 A.2d 1062, 1066–67 (D.C.1980). Such an admission has occurred here. In his affidavit and Rule 12–I(k) statement, Hanson admitted entering a "back-up"[4] contract with Clay that expired on May 8, 1984, by its own terms, because of Clay's failure to respond or to tender earnest money. Thus, Hanson has at least admitted the formation of a subordinate contract.

The channeling function of the statute of frauds, however, remains to be satisfied. It requires, for purposes of the instant case, that the essential terms of the contract must be provided either by the May 3 writing or by an in-court admission. Hanson contends that enforcing the May 3 agreement without the written identification of the buyer would transform the memorandum into a bearer contract for the sale of his property. We agree with this statement as far as it goes, but Hanson's admission in his pleadings that he entered an agreement with Clay is sufficient to satisfy the statute of frauds with respect to its requirement that the identity of the buyer be established by a signed writing. *See Hackney, supra*, 418 A.2d at 1067.

Hanson also contends, and we agree, that the May 3 memorandum's description of the property as 2812 Chesterfield Place, N.W. is inadequate because he also owns adjoining unimproved lot no. 49. As a general rule, the identification of real property by street address, city, and state is sufficient. *See Birnhak v. Vaccaro*, 47 A.D.2d 915, ——, 367 N.Y.S.2d 792, 795 (1975); 37 C.J.S. *Statute of Frauds* § 188 (1943 & 1987 Supp.); *but see Martin v. Seigel*, 35 Wash.2d 223, 226–228, 212 P.2d 107, 109 (1949) (en banc) (avoiding extrinsic testimony). Courts will excuse the omission of the name of the city and state where their identity is clear under the circumstances, but this exception applies only where the property description clearly identifies a particular tract of land and could not apply equally to any other tract. *Freedman v. Walsh*, 331 Mass. 401, 402–403, 119 N.E.2d 419, 420–21 (1954); *Kirshner v. Feigenbaum*, 180 Tenn. 476, 478, 176 S.W.2d 806, 807 (1944). This exception is stringent in its requirements, and under even the most liberal of constructions, courts require extrinsic evidence that leaves no doubt as to the parcel of land that is being sold. *Butler v. Lovoll*, 96 Nev. 931, 934, 620 P.2d 1251, 1253 (1980); *Clark v. Larkin*, 172 Kan. 284, 288, 239 P.2d 970, 973 (1952) (when vendor owns only one parcel of land answering the description in a writing, courts are inclined to uphold a meager property description); *Cousbelis v. Alexander*, 315 Mass. 729, 730–31, 54 N.E.2d 47, 48–49 (1944) (same); RESTATEMENT (SECOND) OF CONTRACTS § 131 comment e, illustration 8 (1981) ("the memorandum in context ... must provide a basis for identifying the land").

While a property description which refers to a street address is often sufficient to satisfy the statute of frauds, the description "2812 Chesterfield Place, N.W." contained in the May 3 memorandum is ambiguous under the circumstances of this case. A liberal construction is of no help to Clay here because the street address is insuffi-

---

4. The words "Back Up Contract" appear at the top of the May 3, 1984 handwritten memorandum, but Hanson, through counsel, represented when Clay's deposition was taken and at the motions hearing that he added these words after Clay had left on May 3 and that they are irrelevant to the contractual issues before the court. Clay contends in his brief on appeal that Hanson abandoned the "back-up" contract argument at the motions hearing and that his contract could not have been a back-up contract because it preceded the tenant's contract. A review of the transcript of the motions hearing reveals, however, that Hanson only disclaimed reliance on the words "Back Up Contract" that appeared on the contract and did not abandon the argument that he had informed Clay that his contract would be secondary to any agreement entered with the tenants. It is possible to agree that a contract shall be subordinate to any subsequent contract.

ciently definite as to whether one or two distinct tracts of property are to be sold. The exception permitting reliance on a street address alone merely recognizes the practical exigencies of an urban setting and should not be extended to a case, such as the present one, where the desirable public policy of certainty in land sale contracts is threatened and the interests of all the parties are not safeguarded. *Cf. Fitzgan v. Burke*, 61 A.2d 721, 723 (D.C.1948).

In his complaint, Clay sought both lots no. 49 and 50. The May 3 memorandum only referred to "2812 Chesterfield Place, N.W." Hanson maintained in his affidavit that "[l]ot 49 in Square 2258, which I also own, is a separate and distinct piece of real property which is not denominated as the premises 2812 Chesterfield Place, N.W." He also made the same claim in his answer to the complaint and in his Rule 12-I(k) statement. This assertion, that 2812 Chesterfield Place only consists of lot no. 50, and that lot no. 49 is a separate and distinct lot which does not fall within the denomination of 2812 Chesterfield Place, was not specifically disputed by Clay at any point in the trial court (despite several opportunities to do so) and, hence, must be accepted as true for purposes of granting summary judgment. *See Williams v. Gerstenfeld, supra* note 3, 514 A.2d at 1176. In his deposition, Clay claimed only that his offer to purchase was in response to a broker's offer of sale and involved a house and a lot at 2812 Chesterfield Place. At the motions hearing, Clay, through counsel, referred to the May 3 and May 7 writings as constituting the contract of sale and referred generally to his deposition as "support[ing] the

basis of [the] claim for relief set forth in the [c]omplaint." Clay did not respond to the express argument by Hanson's counsel at the hearing that the description of the property in the writings was inadequate under the statute of frauds because of the confusion about lot no. 49. Clay's written opposition was deficient in that it "jump[ed] to the [legal] issues ... [that] dispose of the case without [acknowledgement of] the relevant rules of procedure and the centrality of the facts to be established...." *Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington, supra* note 3, 512 A.2d at 300 & n. 1 (and cases cited).[5]

Accordingly, because the alleged land sale contract did not satisfy the statute of frauds, the judgment is affirmed.[6]

---

5. Clay alternatively contends that Hanson is estopped from pleading the statute of frauds because Clay relied to his detriment on Hanson's promise to sell the property. This argument is not properly before this court because Clay failed to raise it in his opposition to Hanson's motion or at the hearing on the motion. The claim was only mentioned briefly in Clay's unsworn complaint and at the hearing on the motion and, viewed in context, must be seen as an elaboration of his damages claim. *See Woodruff v. McConkey, supra* note 3, 524 A.2d at 728 (argument concerning fraud raised for first time on appeal); *Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington, supra* note 3, 512 A.2d at 300 & nn. 1 & 2 (failure to

comply with summary judgment rules). Nor has Clay alleged sufficient facts to invoke the doctrine of reliance in satisfaction of the statute of frauds. *See Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313–14 (D.C.1982).

6. In view of our disposition, we do not reach the question whether the tenants entered a contract for the purchase of the single family dwelling at 2812 Chesterfield Place, N.W. within "a reasonable period to negotiate a contract of sale." *See* D.C.Code §§ 45–1631, –1633, –1636 (1987); *see also Columbia Plaza Tenants Ass'n v. Antonelli*, 462 A.2d 433 (D.C.1983).