James N. and Kathleen L. OWENS, Appellants,

v.

TIBER ISLAND CONDOMINIUM ASSOCIATION et al., Appellees.

No. 10120.

District of Columbia Court of Appeals.

Argued Dec. 2, 1976.

Decided May 10, 1977.

James N. Owens, pro se.

Anne White Foley, Washington D. C., with whom James A. Hourihan and Robert B. Cornell, Washington, D. C., were on the brief, for appellees. Thomas H. Truitt, Washington, D. C., also entered an appearance for appellees.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellee Tiber Island Condominium, which is located between 4th and 6th and M and N Streets, S.W., is organized under the District of Columbia's Horizontal Property Act. D.C.Code 1973, § 5–901 *et seq.* Appellants James and Kathleen Owens own a condominium unit in Tiber Island and are, therefore, subject to Tiber Island's Bylaws. D.C.Code 1973, § 5–913(c); Bylaws of Tiber Island Condominium, Art. III, § C. In a suit between the parties, the trial court granted summary judgment for Tiber Island on the Owens' original claim and on its own counterclaim. In determining whether these rulings were proper, the key issue is whether Tiber Island's Board of Directors was authorized to file a suit against the Washington Metropolitan Area Transit Authority (WMATA) protesting construction of a subway in the area where the condominium is located.

The dispute began on September 10, 1971, when WMATA circulated a notice of public hearing on the construction of a subway tunnel and a Waterfront Metro Station to be located under M Street, S.W., between 3rd and 6th Streets. Feeling that their lives and property values might be adversely affected by the subway construction, residents of Tiber Island sought specific information about construction sites, noise levels, hours and length of construction, possible acquisition of property, ground vibration, location of vent shafts, effects on utilities and the like. The Board did not obtain the desired information and after an unsatisfactory meeting with WMATA representatives on March 19, 1973, requested its counsel, Mr. Thomas Truitt, to assess its legal options. At the next Board meeting on March 26, 1974, Mr. Truitt reported that in his opinion WMATA was unlikely to cooperate or negotiate with Tiber Island unless it was clear that the condominium would, if necessary, resort to court action. It was decided that the Board had the authority to bring a suit against WMATA and

a resolution authorizing retention of legal counsel to institute legal proceedings if a voluntary settlement could not be reached was adopted.

Subsequent negotiations were unsuccessful and on June 24, 1974, Tiber Island filed suit in the District Court for the District of Columbia seeking an injunction against construction, scheduled to begin June 28, until WMATA had complied with the requirements of D.C.Code 1973, § 1–1431 *et seq.* On June 29, the Owens and two other co-owners threatened to intervene in the law suit if Tiber Island did not withdraw as a named plaintiff. Before a motion to intervene could be filed, however, WMATA and Tiber Island reached a settlement agreement.

On July 5, 1974, the Board notified the condominium owners of a special meeting to be held July 23, 1974, for the purpose of voting on a revised budget for 1974, including an assessment for legal fees incurred in reaching the agreement with WMATA. At the meeting thirty-six owners were there in person and twenty-one by proxy. The Owens were present and registered their protest of the Board's actions in bringing the suit as being unlawful per se. Nevertheless, the owners approved a resolution revising the budget and authorizing the Board to assess the members a total of $7,300 to fund the revision. The additional assessment was to be paid in five monthly installments. The Owens' pro rata share was $163.70.

The Owens refused to pay the subsequent assessment and filed the present action, alleging that the Board had unlawfully instituted the civil action against WMATA, had illegally assessed the Owens for its maintenance, and had breached its fiduciary duty to the condominium owners. Tiber Island counterclaimed for the amount of the assessment. Tiber Island's subsequent

motions for summary judgment on both claims were granted and the Owens appeal.

## I.

■ The Owens' contention that the trial court abused its discretion in permitting Tiber Island to file a counterclaim to their complaint is without merit. Their argument that the counterclaim merely duplicates the main claim is specious. Had the Owens failed to prevail on their claim against Tiber Island, the condominium would still have been obliged to file suit if the Owens continued to refuse to pay the assessment voted by the Board. As the claim for the assessment is a compulsory counterclaim under Rule 13(a), such an action would otherwise have been barred. *Southern Construction Co. v. Pickard,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). Tiber Island was, therefore, compelled to counterclaim in the Owens suit.

■ There is also no merit in the contention that Tiber Island should have counterclaimed in equity since the assessment was a lien against the Owens' property under D.C.Code 1973, § 5–916(d). That Code section provides only that amounts due may be assessed as liens,[1] not that they must be and Tiber Island did not purport to file any such lien but proceeded in an action at law. The assertions that Tiber Island failed to comply with requirements of § 5–916(d) are, therefore, irrelevant.

■ The argument that the counterclaim should have been dismissed under Super.Ct. Civ.R. 12(b)(6) for failure to state a claim upon which relief can be granted is equally without merit. Dismissal for this reason is impermissible "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), and Tiber Island's claim obviously does not fall into this category. Therefore,

---

1. D.C.Code 1973, § 5–916(d), reads in pertinent part as follows:

  Said contribution [toward expenses of administration and of maintenance and repairs of the general common elements, and, in

proper case, of the limited common elements of the building and toward any other expenses lawfully agreed upon by the council of co-owners § 916(b)] may be determined, levied, and assessed as a lien . . . . .

the trial court correctly granted Tiber Island's motion to file a counterclaim.

## II.

■ The trial court granted summary judgment in favor of Tiber Island on the Owens' claim and on its counterclaim.[2] In reviewing these rulings our function is to determine whether any issue of fact pertinent to the ruling exists, *International Underwriters, Inc. v. Boyle*, D.C.App., 365 A.2d 779, 782 (1976), and in doing so we are not bound by the findings of the trial court. *Id.* If no such issues exist, we must then decide if Tiber Island is entitled to summary judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

■ There are no factual issues in dispute here. In support of its motion Tiber Island filed a statement of material facts which were not in dispute, supporting affidavits from its secretary-treasurer, the minutes of the meetings of March 26 and July 23, 1974, and copies of pertinent sections of its bylaws. Appellants filed nothing with their oppositions to controvert the facts[3] alleged by Tiber Island to be undisputed, thereby failing to comply with Super.Ct. Civ.R. 56(e) and 12–I(k).

Rule 56(e) requires that when a motion for summary judgment is supported by affidavits, the

> adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

And Super.Ct.Civ.R. 12–I(k) requires a party to file with his opposition a statement of

material facts as to which he contends there is a genuine issue. Failing that,

> the court may assume that the facts as claimed by the moving party are admitted to exist without controversy . . . .
> [*Id.*]

■ It is undisputed (1) that the Board on March 26, 1974, unanimously adopted a resolution authorizing a suit against WMATA; (2) that on July 23, the council of co-owners, with appellants present, and in accordance with the bylaws, approved a revised budget which included the assessment to pay for the legal expenses incurred in the suit against WMATA; and (3) that the appellants were assessed their pro rata share and have refused to pay it. The question is, therefore, whether Tiber Island's Board had the authority, either *ab initio* under the Horizontal Property Act and its bylaws or by subsequent ratification by the council of co-owners, to sue WMATA on behalf of the condominium.

The applicable section of the Horizontal Property Act is D.C.Code 1973, § 5–924(a), which provides:

> Without limiting the right of any co-owner, actions may be brought on behalf of two or more of the unit owners, as their respective interests may appear, by the manager, or board of directors, or of administration with respect to any cause of action relating to the common elements or more than one unit.

The issue then is whether the law suit relates to the common elements or more than one unit of the condominium. In our opinion it does both.

D.C.Code 1973, § 5–902(f) defines "general common elements" and the aspects of the subway construction which concerned the members of Tiber Island fit into at least

---

2. The motion for summary judgment on the counterclaim was granted on January 10, 1975. The Owens appealed this ruling and the appeal was dismissed by this court as an interlocutory, and therefore, non-appealable order under D.C. Code 1973, § 11–721.

3. The Owens filed an affidavit with the opposition to the motion on their claim swearing that

all the facts in their complaint were true and accurate; however, none of these facts controvert those set forth by Tiber Island. They also include in opposition to both motions a list of issues in dispute. These facts are unsupported by affidavits, and are for the most part questions of law.

one category of the definition, *i. e.*, D.C. Code 1973, § 5-902(f)(7), which reads:

all other elements of the building rationally of common use or necessary to its existence, upkeep, and safety.

The settlement agreement with WMATA included regulation of construction hours and sites, noise levels, protective barricades, location of dome relief vents and mucking holes, general cleanliness of the area, noise and vibration from the trains once the subway was in operation. All of these matters are rationally necessary to the condominium's existence, upkeep, and safety. Furthermore, the subway construction affected more than one of Tiber Island's units in terms of the environment, property values, and general aesthetic considerations.

The Board was also authorized by the bylaws to

enforce by legal means the provisions of the Declaration of Condominium, these By-Laws and the regulations for the use of the Condominium adopted by it, and to bring any proceeding authorized to be instituted on behalf of the Council of Co-Owners in the Horizontal Property Act. [Bylaws of Tiber Island Condominium, Article III, C., 10.]

It is clear, therefore, that the Board was authorized both under D.C.Code 1973, § 5-924(a) and its own bylaws to bring the suit against WMATA on behalf of the condominium.

### III.

■ The Owens also contend that in the absence of any agreement to the contrary, legal fees of the WMATA suit should be borne by the co-owners named in the suit as plaintiffs and by Tiber Island, thereby reducing Tiber Island's share to one-ninth of the total fee. During the meeting of July 33, the Owens raised this same point and it was explained to them that counsel was retained only by the condominium. The other eight were invited to become named plaintiffs solely to make a better presentation of the case. In any event, the co-owners agreed by the required vote to pay the legal fees incurred and in our opinion this effectively disposes of the matter.

■ The Owens argue that their due process rights were violated by the assessment schedule basing each co-owner's share on his percentage of ownership. We fail to see any state action in the establishment of the assessment schedule by the condominium and since the Owens voluntarily agreed to the schedule when they bought a unit, any attempt to change it now should be by an attempt to alter the declaration and bylaws by the processes provided for in the bylaws.[4]

Accordingly, the judgments on appeal are *Affirmed.*

---

4. The Owens also urge that summary judgment should not have been granted on their claims of supposed but unspecified breaches of fiduciary duty. As we find no support for these claims in the record, there is no need to discuss them.