John M. ATKINS, Appellant,

v.

INDUSTRIAL TELECOMMUNICATIONS
ASSOCIATION, INC., Appellee.

No. 93–CV–1101.

District of Columbia Court of Appeals.

Argued Sept. 20, 1994.

Decided June 5, 1995.

Douglas C. Herbert, with whom Lani Schweiker Shelton, was on the brief, for appellant.

Tina L. Snee, with whom John H. Johnson, was on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

Opinion concurring in part, and dissenting in part by Chief Judge WAGNER at p. 895.

KING, Associate Judge:

This appeal stems from the trial court's dismissal of a three-count complaint filed by John M. Atkins against Industrial Telecommunications Association, Inc. ("ITA"), his former employer, in which he claimed his discharge from employment was both in violation of public policy (Count I), and a breach

of a contract of employment (Count II); he also claimed he was defamed (Count III). ITA moved to dismiss for failure to state a claim upon which relief could be granted, pursuant to Super.Ct.Civ.R. 12(b)(6) ("Rule 12(b)(6)"), as to each count, and in the alternative, as to Count III, for summary judgment pursuant to Super.Ct.Civ.R. 56 ("Rule 56"). ITA also moved for dismissal of all three counts on grounds of *forum non conveniens.*

The trial court dismissed Counts I and II pursuant to Rule 12(b)(6) and Count III, as discussed *infra, note 15,* pursuant to both Rule 12(b)(6) and Rule 56. As to Count I, the trial court ruled that Atkins failed to state a cause of action for discharge of an at-will employee in violation of public policy because he failed to plead facts within the narrow exception established by *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985) and *Miller v. SEVAMP, Inc.,* 234 Va. 462, 362 S.E.2d 915 (1987). As to Count II, the trial court held that because Atkins was not discharged for a work deficiency, he was not entitled to a pre-termination warning, thus there was no breach of contract. Finally, the court dismissed the two defamation claims contained in Count III,[1] because, with respect to the staff memo, the trial court concluded that Atkins failed to sufficiently allege the falsity of assertions made, and, as to the termination letter, neither District of Columbia nor Virginia law recognized a cause of action for defamation based on compelled self-publication. We affirm with respect to Counts I and II and that portion of Count III relating to the termination letter delivered by ITA to Atkins. We reverse the dismissal of the defamation claim relating to the staff memo circulated by ITA's president to the employees of the company.

## I.

### A. Background

Appellee-defendant, Industrial Telecommunications, Inc. (ITA—formerly SIRSA) is a non-profit organization incorporated in the

1. Atkins claims he was defamed in a May 19, 1992, memorandum to ITA staff members ("staff memo") and in a letter from the president of ITA ("termination letter") that was sent to Atkins on June 23, 1992. The relevant portions of both the memo and the letter are set forth *infra,* notes 13 and 14.

District of Columbia, with its principal place of business in Arlington, Virginia, where Atkins was employed. Atkins was also a Virginia resident. Spectrum Management Systems, Inc. ("Spectrum") was a wholly-owned subsidiary of ITA, also incorporated in the District of Columbia. ITA employed appellant for almost seventeen years, and at the time of his termination, he was First Vice-President of ITA and a member of the Board of Directors of Spectrum.

## B. Events Leading up to Atkins's Termination

At a September 1991 Spectrum Board meeting, Mr. Mark Crosby, ITA's president and Atkins's immediate supervisor,[2] became displeased with Atkins because Atkins did not vote for Crosby's choice for the Chairmanship of Spectrum's Board of Directors. In December of the same year, during a performance review, Crosby informed Atkins he would not receive a bonus. Crosby elaborated that the no-bonus decision was influenced by Atkins's failure to support Crosby's candidate; it was not performance-based, but was intended to deter future insubordination. Crosby also stated Atkins was "stupid" and "a disgrace" to have supported the other candidate and, by doing so, had done himself irreparable harm in his employment. Crosby terminated Atkins on May 19, 1992, providing him with a copy of a memorandum ("staff memo"), previously circulated to the entire staff. This was followed a few days later by transmission of a letter to Atkins ("termination letter"), signed by Crosby, which set forth the reasons for the termination. Atkins claims the staff memo was defamatory. He also claims that the grounds given for his discharge in the termination letter, which he has been compelled to disclose to prospective employers, are false and defamatory, have damaged his reputation, and have hampered his search for employment.

## II.

### A. Scope of Review

■ In reviewing the grant of a Rule 12(b)(6) motion, this court applies the same

standard as the trial judge, *viz:* we accept the allegations of the complaint as true, and construe all facts and inferences in favor of the plaintiff. *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979). Rule 12(b)(6) tests only the "legal sufficiency of the complaint." *Vincent v. Anderson,* 621 A.2d 367, 372 (D.C. 1993) (citing *American Ins. Co. v. Smith,* 472 A.2d 872, 873–74 (D.C.1984)). Dismissal is warranted under this rule only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Owens v. Tiber Island Condominium Ass'n,* 373 A.2d 890, 893 (D.C.1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *accord, Vincent,* 621 A.2d at 372; *Aronoff v. Lenkin Co.,* 618 A.2d 669, 684 (D.C.1992). Any uncertainties or ambiguities involving the sufficiency of the complaint must be resolved in favor of the pleader, and generally, the complaint must not be dismissed because the court doubts that plaintiff will prevail. *Amoco Oil, supra,* 404 A.2d at 203.

Summary judgment is proper if, in construing all facts and inferences in the light most favorable to the non-moving party, *Nader v. de Toledano,* 408 A.2d 31, 41–42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980), the record shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). The burden of showing the absence of any factual issue is borne by the moving party. *Id.* On appeal we determine whether the trial court properly concluded the movant has met its burden of proving that there was no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890, 893 (D.C.1992) (en banc).

### B. Choice of Law

■ As a preliminary matter, a brief discussion of the choice of law to be applied

---

2. The supervisor/subordinate relationship is assumed because Crosby conducted Atkins's performance review and pursuant to ITA's employee manual, this function is only performed by the supervisor.

is necessary to place the parties' contentions in context. ITA argues that, pursuant to *Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 40 (D.C.1989), Virginia's law, as the jurisdiction with the most significant relationship to the events, should apply to each claim. The trial court, however, agreeing with Atkins, applied Virginia law to Counts I and II, and assumed, without deciding, that both Virginia and District of Columbia law applied to Count III. Choice of law issues are normally treated as questions of law subject to de novo review by this court, *id.*, meaning, we make an independent determination of which state law to apply.

Virginia has significant contacts to this case, *see Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 n. 2 (D.C.1985), and we conclude the trial court properly applied Virginia law to Counts I[3] and II. We can discern no basis, however, for applying District of Columbia law to Count III, as the trial court assumed might be the case; therefore we will apply Virginia law in our analysis.[4] That choice should not affect the result, however, because as we have said, "there are few discernible differences between Virginia and District of Columbia defamation law."

*Sigal Constr. Corp. v. Stanbury*, 586 A.2d 1204, 1208 (D.C.1991).[5]

### III.

*Count I—Discharge in violation of public policy*

■ Atkins claims his discharge from ITA's employ violated the public policies of Virginia and the District of Columbia because as a corporate director, he had a fiduciary duty to exercise his vote in the best interest of the company, free from duress and intimidation. In the trial court, Atkins contended, relying on *Bowman* and *Gulledge v. Dyncorp Inc.*, 24 Va.Cir. 538, 541 (1989), an opinion by a Virginia circuit court judge, that he need only prove his discharge was retaliatory, not that he was coerced or threatened before he cast his vote. The trial court rejected Atkins's reliance on *Bowman* because Atkins did not claim Crosby attempted to control his vote, before the vote was cast, as was the case with the *Bowman* employees. *Bowman* involved two employees, also stockholders in the employer corporation, who were terminated for failing to vote their stock in accordance with the directives of management which had been con-

---

**3.** Although as discussed *infra*, p. 890 at note 9, District of Columbia law also bears on the resolution of the trial court's dismissal with respect to this count.

**4.** Our examination of the record reveals no controlling contacts with the District with respect to either of the defamation claims. The staff memo was not circulated to any ITA staff members in the District. The termination letter was transmitted from ITA's Arlington, Virginia, office, its principal place of business, to Atkins at his Manassas, Virginia, residence, and thus that entire transaction, insofar as ITA was concerned, took place within a state in which, as will be explained *infra*, self-publication is not recognized. Under the "governmental interests" test for resolving a conflict of law question that is applied in a case filed in a District of Columbia court, *see Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1270 (D.C.1987), we think that the law of Virginia—the jurisdiction with the greater interest in having its law applied to the case—should be looked to here.

**5.** The trial court did not rule on the motion to dismiss on *forum non conveniens* grounds, and, although we express no view concerning how that motion should have been resolved, we think

it would have been prudent for the trial court to decide that motion before considering the motions to dismiss on the other grounds specified. We note that Atkins was a resident of Virginia and ITA's place of business, where Atkins worked, was also in Virginia. Some events occurred in the District of Columbia, however, and both ITA and Spectrum were incorporated here. An important public factor weighing in favor of the grant of a *forum non conveniens* motion is the presence of substantial questions of foreign law which might better be decided in the jurisdiction whose law is being applied. *See Jenkins v. Smith*, 535 A.2d 1367, 1369 (D.C.1987). Here the trial court, in resolving the Rule 12(b)(6) and the Rule 56 motions, was required to apply Virginia law on each of the three counts. With respect to two of the counts, *i.e.* the count relating to the termination of at-will employees as a violation of public policy and the count dealing with compelled self-publication of allegedly defamatory statements, the determination of foreign law, as this opinion and the dissenting opinion demonstrate, is not easily made. We do not know whether the need to decide Virginia law, in relatively unchartered territories, would have tipped the balance in favor of the grant of the *forum non conveniens* motion; however, we think that the trial court should have addressed that issue first.

veyed to the employees before they cast their vote.[6] The Virginia Supreme Court held the terminations violated public policy in that Va.Code § 13.1–32 guarantees a stockholder the right to cast one vote for each share of stock held, without fear of intimidation. *Bowman, supra,* 331 S.E.2d at 801.

The trial judge also rejected Atkins's reliance on *Gulledge,* in which a Virginia circuit judge extended *Bowman* to an employee, also a member of the Board of Directors, who contended his employment contract was terminated after he failed to vote, as a member of the Board, in favor of a corporate merger desired by management, even though there was no evidence that management instructed him how he should vote before the vote took place. The trial judge, declined to follow *Gulledge* because the judge in *Gulledge* ultimately held that the employee was in fact hired pursuant to a contract, and therefore, the public policy exception for at-will employees did not apply. *Gulledge, supra,* 24 Va.Cir. at 542. Judge Graae thus concluded that the purported "holding" in *Gulledge,* that *Bowman* applied to the circumstances presented, was in fact dicta. We do not decide this issue on the same basis as the trial judge because, as explained *infra,* we are not at all convinced, for the reasons stated, that the Virginia Supreme Court would extend the *Bowman* exception to the circumstances of Atkins's discharge.[7]

▇ First, Virginia courts have consistently followed the rule which holds: "where no specific time is fixed determining the duration of the employment, it is presumed to be an employment at-will," terminable at anytime by either party. This rule was established nearly a century ago in *Stonega Coal & Coke Co. v. Louisville & Nashville Rail-*

*road,* 106 Va. 223, 55 S.E. 551 (1906). *See* Marshall & Wicker, *The Status of the At–Will Employment Doctrine in Virginia After Bowman v. State Bank of Keysville,* 20 U.RICH.L.REV. 267, 280 (1986), (quoting *Hoffman Specialty Co. v. Pelouze,* 158 Va. 586, 164 S.E. 397, 399 (1932)). Years after *Stonega,* the Virginia Supreme court reiterated its commitment to this rule, but because of "the unique facts" of the *Bowman* case, applied one of the "recognized exceptions" to the employment at-will doctrine. *Bowman, supra,* 331 S.E.2d at 801. The legislative basis of the *Bowman* public policy exception is Virginia Code § 13.1–32, which the court construed to:

> [confer] on these plaintiffs as stockholders the right to vote, for each outstanding share of stock held. . . . In order for the goal of the statute to be realized and the public policy fulfilled, the shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer. *Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.*

*Id.* (emphasis added). Although the *Bowman* court did not explain its idea of a "narrow exception," the cases cited for authority all recognized that any exceptions, which purport to uphold a legislatively mandated policy, would be extremely be rare.[8]

Two years later, the same court in *Miller* declined to extend *Bowman* when it affirmed the dismissal of a claim by an employee who

---

**6.** Originally the employees did, in fact, vote their stock as management directed, for a merger, "out of fear of losing their jobs." *Bowman, supra,* 331 S.E.2d at 799. The employees then wrote a letter to the bank president stating that their votes were illegally obtained, and therefore, null and void. The merger was abandoned, according to the employees' allegations, because "the defendants feared that the illegal activities involved in obtaining the proxies of . . . [the employees] would be discovered." *Id.* Management fired the employees six days later. The Virginia Supreme Court held that the employees had stated a cause of action, applying an excep-

tion to the at-will doctrine based on a retaliatory discharge in violation of public policy. *Id.*

**7.** *See Sebastian v. District of Columbia,* 636 A.2d 958, 959 n. 2 (D.C.1994) (judgment of trial court may be affirmed on ground not considered by trial court).

**8.** *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Sabine Pilot Service, Inc., v. Hauck,* 687 S.W.2d 733 (Tex.1985); *Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978).

contended she was terminated in retaliation for appearing as a witness at a fellow employee's grievance hearing. The court observed:

> The employment-at-will doctrine is a settled part of the law of Virginia. Parties negotiating contracts for the rendition of services are entitled to rely on its continued stability. Serious policy considerations, affecting countless business relationships, are involved in any change that may be contemplated. We therefore think it wise to leave to the deliberative process of the General Assembly any substantial alteration of the doctrine.

*Miller, supra,* 362 S.E.2d at 919. Further support for a narrow reading of *Bowman* is provided by a United States District Court judge who observed that in Virginia the exception to the at-will doctrine is "triggered only when the discharge is in response to the employee's refusal to commit an unlawful act or in the employee's exercise of a statutory right." *Haigh v. Matsushita Elec. Corp. of America,* 676 F.Supp. 1332, 1351 (E.D.Va. 1987).

Second, ITA argues, and we agree, that the statutes upon which Atkins relies do not appear to confer on directors the right to exercise their vote free of any corporate management's influence,[9] unlike the statutes relating to shareholders' rights as considered in *Bowman.* Notwithstanding, even if there is a generalized right of a board member to vote free of managerial influence, we think it unlikely, in light of Virginia's employment at-will tradition, that the Virginia Supreme Court would extend protection to a discharged employee who was a member of the Board of Directors of a wholly-owned subsidiary as a result of his employment with the parent company, who was terminated because he exercised his vote in a manner contrary to the interests expressed by the parent company's chief executive officer, who was also the employee's immediate supervisor.[10]

**9.** The language of the statutes do not fall within the *Bowman* exception because they create no statutory rights in a corporate director, the exercise of which would violate public policy. *See* Va.Code Ann. §§ 13.1–673.B, 13.1–682 & 13.1–694 (1993); *See also* D.C. Code §§ 29–332(a), 29–335, and 29–343 (1989).

Va Code Ann. § 13.1–673.B, *"Requirement for and duties of board of directors"* provides that the board of directors manage the business and affairs of a corporation subject to any limitation conferred in the articles of incorporation. The second statute, Va.Code Ann. § 13.1–682, *"Vacancy on board of directors,"* instructs on the filling of a vacancy on the board of directors, while, Va.Code Ann. § 13.1–694, *"Duties of officers,"* bestows upon each officer, the authority to perform the duties set forth in the bylaws which are prescribed by either the board of directors or an officer with proper authorization.

D.C. Code § 29–332(a), *"Board of directors; qualifications,"* states that the corporation is run by the board of directors and that the qualifications for the directors may be set forth in the articles of incorporation and the bylaws. D.C.Code § 29–335, *"Vacancies,"* deals with the filling of a vacancy on the board of directors. Finally, D.C.Code § 29–344, *"Removal,"* prescribes that an officer or agent who is appointed by the board of directors may be removed by the board of directors whenever, in its judgment, it is in the best interest of the corporation.

**10.** In this case it could be argued that, since both the parent and subsidiary were incorporated in the District, that the District has a greater interest than Virginia in the manner that a District corporation relates to members of its board of directors. District law, however, with respect to exceptions to the at-will employment doctrine, would be no more favorable to Atkins's cause than Virginia law. We have recognized only one very narrow exception to the at-will doctrine and we have repeatedly rejected efforts to expand it, holding that only the *en banc* court can authorize any further departure. *See Adams v. George W. Cochran & Co.,* 597 A.2d 28, 32, 34 (D.C.1991) (a fired at-will employee can maintain an action against the former employer for wrongful discharge "when the sole reason for the discharge was the *employee's refusal to violate the law,* as expressed in a statute or municipal regulation." emphasis added); *Carl v. Children's Hospital,* 657 A.2d 286 (D.C.1995), (declined to extend exception for firing due to employee having testified, in a manner adverse to the employer's interest, before legislative body and as an expert witness in court); *Gray v. Citizens Bank of Washington,* 602 A.2d 1096, 1097 (D.C.) *opn. reinstated on denial of reh'g,* 609 A.2d 1143 (D.C.1992) (we declined to expand *Adams* to include employee terminated for reporting possible illegal conduct of co-workers to senior management holding that "only the *en banc* court may undertake th[at] extension"); *Nolting v. National Capital Group, Inc.,* 621 A.2d 1387, 1389 (D.C.1993) (declined to expand exception for firing triggered by employee filing workers' compensation claim); *Elliott v. Healthcare Corp.,* 629 A.2d 6, 8–9 & n. 5 (D.C. 1993) (same: for reporting deficiencies in the maintenance of dialysis machines to management). Even if this panel was authorized to

Finally, *Gulledge* is the only Virginia decision, state or federal, that holds "the voting rights of directors are similar to those of shareholders and should also be protected by public policy." *Gulledge, supra,* 24 Va.Cir. at 541. We note that federal courts determining state law pursuant to the Rules of Decision Act,[11] under the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1930), apply state law as either declared by its legislature, or by its highest court—not a lower court. *King v. Order of United Commercial Travelers of Am.,* 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948). "[W]hile the decrees of lower state courts should be attributed some weight, the decisions [are] not controlling where the highest court of the State has not spoken on the point." *Northwestern Mut. Life Ins. Co. v. Atlantic Research Corp.,* 847 F.Supp. 389 (E.D.Va.1994). We think it sound policy to follow the same approach and in doing so we conclude that the *Gulledge* decision is "not controlling [and we therefore] ... proceed to make our own determination of what the ... [Virginia Supreme Court] would probably rule in a similar case." *King, supra,* 333 U.S. at 161, 68 S.Ct. at 492–93 (federal court is not bound to follow state trial court decisions where those decisions are binding only on the parties to the action). That conclusion, as we have said, is that the Virginia Supreme Court would not recognize the exception to the at-will firing doctrine presented in this case. Accordingly, the trial court did not err in dismissing that count of the complaint.

*Count II—Breach of Contract*

■ Atkins alleges ITA's Employee Manual and its employment practices created a binding employment contract which ITA breached by failing to terminate him in accordance with its established practices and procedures. We affirm the trial court's dismissal because, as a matter of law, this Employee Manual, which was incorporated into the complaint by reference, does not constitute an employment contract. *See Graham v. Central Fidelity Bank,* 245 Va. 395, 428 S.E.2d 916, 918 (1993).

■ Employee handbooks and manuals can, under some circumstances, create binding contracts, *Hercules Powder Co. v. Brookfield,* 189 Va. 531, 53 S.E.2d 804, 808 (1949), but the presence of disclaimers generally preclude the creation of any contractual rights not already vested. *See Graham, supra,* 428 S.E.2d at 918. ITA's Employee Manual, in three separate places, contains unequivocal disclaimers stating the manual is not a contract and that an "at-will" relationship exists between ITA and its employees.[12] We reject Atkins's contention that it is for the jury to determine the significance of the ITA disclaimers, and instead conclude that the Virginia courts would determine the term "at-will," and similar disclaimers, are terms of art, the meanings of which are questions of law for the court. *See Graham,* 428 S.E.2d 916; *Goos v. Nat'l Ass'n of Realtors,* 715 F.Supp. 2 (D.D.C.1989); *Nettles v. Techplan Corp.,* 704 F.Supp. 95 (D.S.C.1988).

Atkins concedes that a clear and unambiguous disclaimer may serve to prevent an

make a further exception, as we note in the text above in assessing the anticipated attitude of the Virginia Supreme Court, we would be unwilling, without expressing any view with regard to the role of a member of a board of directors generally, to extend the exception to an employee who was discharged because he failed to follow the instructions of his immediate supervisor while acting in his role as a member of the board of directors of a wholly-owned subsidiary.

**11.** 28 U.S.C. § 1652 (1994).

**12.** First, in the "FOREWORD," the Manual states:

This Manual is only a general guide to [ITA's] current employment policies. It is not intended to create, nor should it be construed to consti-

tute, a contract between [ITA] and its employees ... [ITA] may enhance, modify or delete any policy, procedure or benefit described in this Manual at any time.

Second, under "TERMS OF EMPLOYMENT," the Manual states:

The employment relationship between [ITA] and its employees is an "at-will" relationship. This means that any employee has the right to terminate his/her employment at any time for any reason, and the employer also has the right to terminate the employment relationship without any obligation.

Finally, in the section "RECEIPT AND ACKNOWLEDGEMENT," the Manual states:

I further understand that matters discussed in the employee Handbook are subject to change and do not create any contractual commitments by [ITA].

employee manual from being treated as a contract. *See, e.g., Miller, supra,* 362 S.E.2d at 918. Nonetheless, he argues that where the employer attempts to confuse, rather than clarify, the employer/employee relationship, which he asserts was the case here, the courts have left it to the jury to determine whether the manual could be construed as a contract. *See Sanchez v. Life Care Centers of America, Inc.,* 855 P.2d 1256, 1259 (Wyo. 1993) (employees should not have to hire a lawyer to learn that under the employment relationship, they could be fired at any time for any, or no reason); *Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841, 848–49 (1987) (summary judgment unwarranted if language of employee manual is ambiguous). Atkins maintains that ITA's manual is carefully written to avoid any such clear statement, using "legalese" that may alert an attorney that no rights were being given to the employees, but which provided no such notice to lay persons. However, based on the unambiguous language of the disclaimers and Atkins's acknowledgement that "I ... understand ... the handbook ... do[es] not

create any contractual commitments by [ITA]," *see note 12 supra,* we find Atkins's reliance on *Sanchez* and *Morriss* to support his ambiguity claim unpersuasive. Thus we reject Atkins's claim that the jury could find that a contract of employment was created by the Employee Manual.

*Count III—Defamation*

■ Finally, Atkins alleges ITA defamed him in two ways: (1) in a May 19, 1992, "staff memo" from Crosby circulated to ITA's staff members,[13] and (2) in a June 23, 1992, "termination letter" which Atkins contends he was compelled to publish in response to inquiries from prospective employers asking of the reasons for his leaving ITA.[14]

The trial court dismissed this count, ruling that Atkins failed to state a cause of action for defamation because: (1) with respect to the staff memo, Atkins did not allege that anything stated in the memo was false, and (2) with respect to the termination letter, neither the District of Columbia nor Virginia recognize a cause of action for defamation based on compelled self-publication.[15]

**13.** The staff memo read:

TO: [ITA] Staff
FROM: Mark Crosby
SUBJECT: John's Departure

It is with sincere regret that I must inform you that John Atkins is no longer an employee of [ITA]/SMS. I have taken this action in the best interests of [ITA], the staff and John.

At any time in this organization's history, it is absolutely critical that [ITA]'s staff collectively support the strategic policies established by the Board of Directors. This is especially true for [ITA]'s staff officers. I am professionally accountable to my employers to ensure that all projects and programs are performed and finalized in a manner consistent with sound management principles. I am equally held accountable to remove any staff member who, for whatever reason, proves to become an impediment to the full implementation of [ITA]'s programs. I respect and solicit contrary input in the internal decision-making process. Once a course of action has been identified and adopted, however, I expect, without hesitation, a full commitment to [ITA]'s goals. This includes loyalty to the organization's leadership.

\* \* \* \* \* \*

(The remainder of the memo dealt with reassignment of duties among staff members until a replacement for Atkins was employed.)

**14.** The termination letter read in pertinent part:

Dear John:
[ITA]'s attorneys recently informed me that, following consultation with your attorney, you will not be executing the Separation Agreement that was provided to you during our meeting on May 19, 1992....

I also understand that you apparently objected to the agreement's reference to your separation from [ITA] as a resignation rather than a termination. That characterization was included in the proposed agreement solely to maximize your flexibility in offering explanations for your separation to future parties.

We have no reluctance to communicate to you nor other legally appropriate parties the rational [sic] for your termination. As discussed with you generally during our May 19 meeting, you were terminated for several reasons, including your reluctance to fully support and advance strategic decisions made by the management of [ITA] and Spectrum Management Systems, Inc. In my view, you were insubordinate, disloyal, failed to implement directives in a timely manner, and undermined support among employees for the organizations, management....

Sincerely,
Mark E. Crosby
President

**15.** Atkins contends the defamation count was dismissed on Rule 12(b)(6) grounds, and not pursuant to summary judgment, while ITA maintains the court dismissed pursuant to both Rule 12(b)(6) and Rule 56. In its discussion of each allegation of defamation the court ruled: "Plain-

*The May 19, 1992 Memo*

To be actionable, Atkins must show the memo was false and defamatory. *Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713, 725, *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985). Atkins's version of events, contained in his affidavit, contradicts virtually every assertion contained in the staff memo and affidavit of one Andre Cote, submitted by ITA in support of its motion to dismiss.[16] Specifically, Atkins contends the numerous raises, bonuses and the Staff Achievement Award he received are evidence that he was loyal to the organization and was an asset to ITA because he faithfully performed his duties at all times. The affidavit also avers that many of the statements Cote attributed to Atkins were made by Cote himself, and, Cote lied when he claimed Atkins tried to prevent TELEFAC from affiliating with ITA because TELEFAC was already managed by Spectrum, the wholly-owned subsidiary.

Viewed in the light most favorable to Atkins, the assertions in his affidavit were sufficient to establish the existence of disputed material facts precluding summary judgment and the contentions in the complaint were sufficient to resist the motion to dismiss pursuant to Rule 12(b)(6). *McBryde, supra,* 404

A.2d 200; *Davis v. Gulf Oil Corp.,* 485 A.2d 160 (D.C.1984); *Swann v. Waldman,* 465 A.2d 844 (D.C.1983). Atkins's factual allegations, if established, would prove that the memo was false. *Leichtman v. Koons,* 527 A.2d 745 (D.C.1987); *Alger Corp. v. Wesley,* 355 A.2d 794 (D.C.1976) (reversal warranted where genuine factual dispute exists). Therefore, dismissal or entry of summary judgment on that basis would not lie.

■ Finally, ITA contends the alleged defamatory remarks in the staff memo were not specifically directed at Atkins and, in any event the comments were privileged, and thus non-defamatory. First, we conclude that a reasonable jury could find by a preponderance of the evidence,[17] the memo's subject, "John's departure," sufficiently identified Atkins to meet the *Gazette* "of or concerning test." *See Gazette, supra,* 325 S.E.2d at 738 (the test is met if plaintiff "shows that the publication was intended to refer to him and would be so understood by persons reading it who knew him.") (citation omitted). Second, although a defamatory communication to other employees of the reason for a co-worker's discharge may be privileged in some circumstances, *Kroger Co. v. Young,* 210 Va. 564, 172 S.E.2d 720 (1970), the communication is nonetheless actionable

tiff has failed to state a cause of action," language consistent with dismissal pursuant to Rule 12(b)(6). In the concluding paragraph of the order, however, the trial court: "ORDERED that Defendant's Motion to Dismiss, or in the alternative, Motion for Partial Summary Judgment is GRANTED. Plaintiff's complaint is DISMISSED."

We conclude that the trial court's ruling, at least as it relates to the memo, should be considered a ruling pursuant to Rule 56, because the court considered material outside of the complaint in its ruling. Thus, in our review of that ruling, we can also consider material outside the four corners of the complaint. *See Clay v. Hanson,* 536 A.2d 1097 (D.C.1988); *American Ins. Co., supra,* 472 A.2d at 874 (court may not rely on matters outside the complaint in Rule 12(b)(6) motion; if it does, it is disposed of pursuant to Rule 56). Since our reversal of the dismissal on Rule 56 grounds does not dispose of the question of whether the complaint could properly be dismissed on Rule 12(b)(6) grounds, we will review the dismissal on that basis as well. However, the dismissal of that portion of the complaint relating to the publication of the termination letter was clearly based upon Rule 12(b)(6).

16. The affidavit of Andre Cote, senior vice president of Spectrum operations, stated that Atkins discredited the president, undermined his support among his staff and generally ridiculed him. In addition, Cote claimed that Atkins exhibited disloyalty to the organization by discouraging TELEFAC (an organization with which ITA desired to affiliate) from affiliating with ITA. ITA argues this affidavit proves Mr. Crosby's statements of Atkins's alleged disloyalty were true, and thus summary judgment was appropriate.

17. The court must initially determine whether the challenged statement is capable of bearing a defamatory meaning. *Haycox v. Dunn,* 200 Va. 212, 104 S.E.2d 800, 811 (1958); *Luhring v. Carter,* 193 Va. 529, 69 S.E.2d 416, 423 (1952); *Marsh v. Commercial and Savings Bank of Winchester, Va.,* 265 F.Supp. 614 (W.D.Va.1967); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 111, at 781 (5th ed. 1984) ("It is for the court in the first instance to determine whether the words are reasonably capable of a particular interpretation, or whether they are necessarily so; it is then for the jury to say whether they were in fact so understood.").

when the privilege is abused or where malice is established, *see Peoples Life Ins. Co. v. Talley,* 166 Va. 464, 186 S.E. 42 (1935); *Gazette, supra,* 325 S.E.2d at 727; *Montgomery Ward & Co. v. Nance,* 165 Va. 363, 182 S.E. 264, 271 (1935),—factors sufficiently in dispute here to be appropriately determined by the fact-finder. *See Smalls v. Wright,* 241 Va. 52, 399 S.E.2d 805, 807 (1991). Thus both of those issues must be resolved in the trial court.

For all of the reasons stated, we hold the trial court erred in granting summary judgment [18] and in dismissing the complaint pursuant to Rule 12(b)(6).

*The June 23, 1992 Letter*

■■■ Atkins alleges he was defamed in the termination letter and there was actionable publication when he was compelled to disclose the reasons stated in this letter for his dismissal, to prospective employers. ITA contends, even if the letter was defamatory, there was no publication to anyone other than Atkins. To prevail on this claim, Atkins must show, among other elements, that the defamatory statement was published by the defendant, without privilege, to a third party. *See Gazette, supra,* 325 S.E.2d 713.

Atkins maintains the doctrine of compelled self-publication creates an exception to the rule that the defendant cannot be held accountable if a plaintiff voluntarily republishes a defamatory statement. Where this exception is recognized, it may be applied when "the originator of the defamatory statement has reason to believe that the person will be under strong compulsion to disclose the contents of the defamatory statement to a third person," *Elmore v. Shell Oil Co.,* 733 F.Supp. 544, 546 (E.D.N.Y.1988) (citations omitted), such as in employment cases where a terminated employee is forced to repeat the stated reasons for his or her termination to prospective employers. *See Lewis v. Equitable Life Assurance Soc'y of the U.S.,* 389 N.W.2d 876,

886–88 (Minn.1986) (fabrication of reasons for termination is an unacceptable alternative).

Only a minority of jurisdictions have recognized a defamation claim based on compelled self-publication, and those so holding do not agree on the basis on which to ground liability. *Yeitrakis v. Schering–Plough Corp.,* 804 F.Supp. 238, 250 (D.N.M.1992). For example, some hold the originator liable if he believed the defamed person will be compelled to disclose the content of the defamatory statements to third persons. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Colonial Stores v. Barrett,* 73 Ga.App. 839, 38 S.E.2d 306, 308 (1946) (employee required by government to disclose libelous statement on application for employment). The remaining jurisdictions find actionable publication where:

> the circumstances indicated the communication to a third party is likely ... [or] if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party....

*First State Bank of Corpus Christi v. Ake,* 606 S.W.2d 696, 701 (Tex.1980) (citations omitted).

Those jurisdictions that have rejected the doctrine have done so either because: (1) the element of compulsion was missing, or the absence of a casual link between the action of the originator and the damage caused by the publication, *see, e.g., Church of Scientology of California, Inc. v. Green,* 354 F.Supp. 800 (S.D.N.Y.1973); *Ritter v. Pepsi Cola Operating Co.,* 785 F.Supp. 61 (M.D.Pa.1992); or (2) the theory had not gained widespread acceptance. *See, e.g., De Leon v. St. Joseph Hosp., Inc.,* 871 F.2d 1229 (4th Cir.), *cert. denied,* 493 U.S. 825, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989); *Yeitrakis, supra,* 804 F.Supp. at 238.[19]

---

18. ITA claimed, for the first time during oral argument, without providing any legal support, that labelling an employee as disloyal is not defamatory. This issue was not raised before the trial court, nor was it briefed in this court; therefore, we decline to consider it here. *Cannon v. District of Columbia,* 569 A.2d 595 (D.C.1990).

19. As *De Leon* indicates, the self-publication doctrine has been subject to criticism on various grounds. *See* Charles S. Murray, Jr., Note, *Compelled Self-Publication in the Employment Context: A Consistent Exception to the Defamation Requirement of Publication,* 45 WASH. & LEE L.REV. 295, 314–20 (1988) and authorities cited.

While we are skeptical of ITA's contention that Atkins lacked the compulsion requirement because the employer gave him the option to classify his termination as a resignation, *see Lewis, supra,* 389 N.W.2d at 886–88, we do not believe the Virginia Courts would adopt the self-publication theory for several reasons. First, there is no basis on which to ground liability. Atkins has not alleged any specific instance in which he was denied employment because of the publication of the defamatory statements, and even had he done so, we do not think the Virginia Courts would be inclined to open the "pandora's box" which would "visit liability for defamation on every ... [Virginia] employer" whose former employee failed to secure employment following his or her termination. *De Leon, supra,* 871 F.2d at 1237.

Second, the self-publication theory has not been widely accepted and we cannot predict on what basis, if any, the Virginia Courts would recognize it as viable. In affirming the trial court's dismissal of Atkins's claim, we share the hesitancy and restraint expressed by the *Yeitrakis* court (a federal district court interpreting New Mexico's law)

> In the absence of any clear indications ... [Virginia] would recognize such a claim ... [we feel] constrained to dismiss.... There simply is not the historical and judicial context at this time to predict ... that the Supreme Court of ... [Virginia] would adopt this tort of self- ... [publication] as the law of ... [Virginia].... *Unless the judicial landmarks are so clearly evident as to point in a single direction on that subject,* this court should not presume upon functions of the Supreme Court of ... [Virginia] with regard to the proper development of the common law in ... [Virginia] (emphasis added).

*Yeitrakis, supra,* 804 F.Supp. at 250 (citation omitted).

Accordingly, we remand the case to the trial court with instructions to vacate its order dismissing the defamation count as it relates to the office memo. With respect to all other claims, we affirm.

*Affirmed in part*

*Reversed in part.*

WAGNER, Chief Judge, concurring in part, and dissenting in part:

In my view, applying Virginia law, appellant set forth sufficient facts to withstand a motion to dismiss under Super.Ct.Civ.R. 12(b)(6) with respect to count II of the complaint alleging a discharge in violation of established public policy. For this reason, I respectfully dissent from that part of Part III of the opinion which addresses the issue. Appellant alleged in the complaint, *inter alia,* that he was discharged from his employment in retaliation for the proper exercise of his voting responsibility as a corporate director of a wholly-owned subsidiary of his corporate employer. Applying a narrow exception to the employment-at-will doctrine, Virginia has recognized a cause of action in tort by an employee subjected to retaliatory discharge under analogous facts. *See Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 801 (1985); *see also Haigh v. Matsushita Elec. Corp. of America,* 676 F.Supp. 1332, 1351–52 (E.D.Va.1987).

In *Bowman,* the retaliatory discharge claim was based upon allegations that the employer had discharged the employees in retaliation for exercising their protected, statutory right to vote their shares.[1] The court pointed out that "[t]his statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management." *Bowman, supra,* 331 S.E.2d at 801. Accordingly, the court held that "[b]ecause the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered

---

1. The employees in *Bowman* voted their stock in favor of merger as directed by management "out of fear of losing their jobs." *Bowman, supra,* 331 S.E.2d at 799. Thereafter, the employees wrote a letter to the bank president stating that their votes were obtained illegally, and therefore, null and void. According to plaintiff's allegations, the merger was abandoned because "the defendants' feared that the illegal activities involved in obtaining the proxies of ... plaintiffs would be discovered." *Id.* Management fired the employees six days later.

discretion of a shareholder to vote freely his or her stock in the corporation." *Id.*

Although *Bowman* involved the statutory rights of shareholders, appellant argues persuasively that a corporate director's unfettered exercise of obligations pursuant to statute are subject to the same public policy considerations and protections recognized in *Bowman*. Moreover, corporate directors must act in a fiduciary capacity with respect to the corporation and its shareholders. *See Glass v. Glass*, 228 Va. 39, 321 S.E.2d 69, 74 (1984); *see also Wisconsin Ave. Assoc. v. 2720 Wis. Ave. Coop. Ass'n, etc.*, 441 A.2d 956, 962 (D.C.1982). It is at least equally compelling that in discharging their statutory responsibilities as fiduciaries, as a matter of public policy, the corporate director must be free from the type of intimidation and duress found actionable in *Bowman*. Therefore, in my opinion, appellant's allegations fall within the ambit of the *Bowman* exception to the at-will doctrine. *See Bowman, supra,* 331 S.E.2d at 801. Accordingly, contrary to the majority, I conclude that Virginia would recognize the cause of action alleged in appellant's complaint for retaliatory termination of employment in violation of public policy.

The trial court determined that the rule established in *Bowman* is limited to circumstances where the employee is intimidated in exercising voting rights prior to voting. I glean no such requirement from *Bowman*. The gravamen of the action appears to be the employer's improper use of its right to terminate the employee "in order to subvert a right guaranteed to stockholders by statute." *See Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915, 918 (1987); *see also Bowman, supra,* 331 S.E.2d at 801. An interpretation restricting the rule to circumstances involving prior restraint would undercut the public policy sought to be furthered by recognition of the tort action. An actual discharge, such as that alleged in this case, offends public policy no less than a threat of discharge. Further, appellant alleged in the

complaint that the president of his corporate employer made known prior to the meeting that he was against the vote in favor of the person for whom appellant cast his vote. Construing the complaint most favorable to appellant, accepting the allegations as true and resolving ambiguities in his favor, in my view, appellant stated a claim under *Bowman*, and it was error to dismiss it under Rule 12(b)(6). *See Aronoff v. Lenkin Co.*, 618 A.2d 669, 685 (D.C.1992).[2]

I concur in the result reached in Part II of the opinion related to the defamation claim insofar as it is premised on a Rule 12(b)(6) analysis. It appears to me that the trial court based its ruling on that ground alone. In considering a memorandum and letter, the trial court considered no material outside of the complaint because both documents were attached to the complaint and incorporated therein by reference. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *Solis–Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985) (report attached to complaint considered part of pleadings for all purposes including a Rule 12(b)(6) motion).

---

2. In any event, courts should also be reluctant to dismiss a complaint where a novel theory of liability is asserted. *Morgan v. American Fam. Life Assur. Co. of Columbus*, 559 F.Supp. 477, 483 (W.D.Virginia 1983) (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 603 (1969)); *Dart Drug Corp. v. Corning Glass Works*, 480 F.Supp. 1091, 1098–99 n. 10 (D.Md.1979)). Such claims are better tested in the context of a motion for summary judgment. *Id.*