**Demaris CAREY, Appellant,**

v.

**EDGEWOOD MANAGEMENT CORPORATION, Appellee.**

No. 98–CV–1707.

District of Columbia Court of Appeals.

Argued May 12, 2000.

Decided July 6, 2000.

Rochanda F. Hiligh, with whom Roy L. Pearson, Jr., was on the brief, for appellant.

Lisa J. Dessel, Washington, DC, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In this suit arising from a landlord's refusal to rescind a notice barring an individual from entering the plaintiff-appellant's apartment, the issue is whether the trial judge correctly dismissed under Super. Ct. Civ. R. 12(b)(6) appellant's claims of breach of the lease agreement, intentional infliction of emotional distress, and violation of constitutional rights. As to the first two claims, we hold that in terminating the case the judge erroneously relied on assertions of fact beyond those alleged in the complaint, in a manner that denied appellant a reasonable opportunity to counter those assertions. We reverse as to the claim of breach of the lease agreement but sustain on other grounds the dismissal of the intentional infliction claim. We also affirm the dismissal of appellant's constitutional and related federal statutory claims.

## I.

Appellant (hereafter Carey) sued her landlord, Edgewood Management Corporation (Edgewood), for damages and declaratory and injunctive relief, asking the court to prohibit Edgewood from barring entry of invitees to her apartment. Specifically, she claimed that Edgewood unlawfully was continuing to bar the father of her children, Ernest Carson, from her apartment. According to the complaint, Carey had asked Edgewood in May of 1995 to bar Carson from the apartment following an argument she had had with him, but that she subsequently reconciled

with him and then asked Edgewood to rescind the barring notice. Edgewood lifted the barring order in May 1996 but in June 1997, despite Carey's repeated objections, issued another notice barring Carson from the property. Carey alleged that Carson was the only family member or friend available to help her care for her children while she left the apartment on necessary business, and that his exclusion from the premises threatened her with serious consequences including removal of the children from her custody by the District of Columbia. Carey asserted that the barring notice breached provisions of her lease agreement with Edgewood,[1] amounted to intentional infliction of emotional distress, and violated her first amendment right to associate and fifth amendment right to due process.

Carey also moved for a preliminary injunction against the barring order. In response, Edgewood cited legal authority recognizing its right and duty as a landlord to maintain the security of the multi-unit apartment complex, and evidence of Carson's "long history of encounters with the D.C. Metropolitan Police," including most recently his arrest for possession of cocaine with intent to distribute it while in Carey's apartment.[2] Edgewood further cited "numerous incidents involving Carson which put [Edgewood] on notice that Carson is dangerous, involved in illegal activity and a threat to [Edgewood's] tenants, occupants, visitors and staff."

Shortly thereafter, Edgewood moved to dismiss the complaint under Super. Ct. Civ. R. 12(b)(6) for failure to state a claim upon which relief could be granted. The accompanying memorandum did not refer

1. Specifically, she alleged that it breached Section 21 of the lease prohibiting differential treatment of a tenant based on her "unmarried mother status," Section 14 by imposing a new "house rule" in the form of a barring notice without thirty days' prior notice as required, and Section 22 by implementing a change in the agreement without giving her the sixty days' notice of the change required by that section.

2. Edgewood asserted that in or about October 1996, a special employee of the police had bought drugs from Carson in appellant's apartment, and that a search warrant issued as a result had led to the seizure of drugs, unregistered guns and ammunition, currency, and identifying papers from the apartment. Supporting records were attached to the opposition.

**954**

to the factual representations about Carson in Edgewood's opposition to a preliminary injunction. Instead, as to the claimed breach of the lease, Edgewood argued that the complaint failed for lack of specificity: it neither quoted nor had attached to it the lease agreement; it "fail[ed] to establish the factual predicate for [the] claim"; and it "fail[ed] to assert either non-performance or repudiation of any identified lease term."

The trial judge, without a hearing, granted the motion to dismiss on grounds partly different from those advanced by Edgewood. The judge acknowledged that the complaint specified a breach of various sections of the lease, including discrimination on the basis of marital status, but ruled that Edgewood's right as landlord to exercise control and ensure protection of its property and tenants was confirmed by the lease and case law, and pointed to the information documented in Edgewood's opposition demonstrating Carson's "violent past," especially his "aggressive and threatening behavior against other occupants of defendant's complex." Given the indications of Carson's "volatile nature" and the fact that he was "known to be disruptive," the judge concluded that Edgewood would have "place[d] itself at risk [of legal liability] if it did not take steps to prevent Mr. Carson, a foreseeable known risk, from injuring defendant's occupants." [3]

## II.

■ This court recently had occasion to restate the purpose and limitations of a Rule 12(b)(6) motion to dismiss:

Under Super. Ct. Civ. R. 8(a) and (e), a plaintiff need only plead sufficient facts such that the complaint "fairly puts the defendant on notice of the claim against him." A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and "admits all facts well pleaded

but contests the plaintiff's right to any recovery based on those facts." Accordingly, a defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself. If any such matters are presented to the court, it must treat the motion as one for summary judgment as provided in Super. Ct. Civ. R. 56.

*Herbin v. Hoeffel,* 727 A.2d 883, 886 (D.C. 1999) (citations and footnote omitted). Rule 56, in turn, permits the grant of summary judgment if there are no material facts in dispute and the movant is entitled to judgment as a matter of law. But before a Rule 12(b)(6) motion may be converted to one for summary judgment, "the express language of the Rule requires that 'all parties be given a reasonable opportunity to present material relevant to the Rule 56 motion.'" *Kitt v. Pathmakers, Inc.,* 672 A.2d 76, 79 (D.C.1996) (quoting *Vincent v. Anderson,* 621 A.2d 367, 372–73 (D.C.1993)).

■ Edgewood does not dispute that the trial judge relied on facts outside the complaint in granting the motion to dismiss. Nor does it argue that either the motion to dismiss or Edgewood's opposition to Carey's motion for a preliminary injunction put her on the required notice of need to present factual material countering the information about Carson's violent past on which the trial judge relied. With regard to Carey's breach of contract claim, therefore, this appeal would seem to be controlled by decisions such as *Kitt, supra,* where we found the grant of the Rule 12(b)(6) motion to be error because it was "undisputed that the trial judge neither informed the parties that he would be relying upon ... facts [outside the complaint], nor gave them an opportunity to present additional factual material." 672 A.2d at 79; *see also Herbin,* 727 A.2d at 886–87 ("for the trial court to have relied on ... facts [not appearing in the com-

---

3. Those same indications, the court reasoned, removed the basis for appellant's claim of intentional infliction of emotional distress.

And the court agreed with Edgewood that appellant had failed to allege state action sufficient to support her constitutional claims.

plaint], without notifying Herbin that it intended to do so and giving him an opportunity to present additional material relevant to a summary judgment motion, is reversible error").

Edgewood contends, however, that the judge's repeated references to Carson's violent proclivities were in essence surplusage because the real reason she dismissed was Carey's failure even to allege that the barring order was issued without adequate factual cause. According to Edgewood, Carey's breach of contract claim was based on her putative right to 30 or 60 days' notice of a new limitation on her lease terms (including the right to have guests) *regardless* of the security risk a particular invitee posed to other tenants. And, Edgewood asserts, the trial judge simply recognized the absence in law (and in any lease provision cited by the complaint) of authority thus severely limiting the landlord's ability to take timely and necessary action to protect tenants by means of a barring notice.

The judge's dismissal order cannot reasonably be read that way. First, she did not restrict her focus to the lease provisions cited in the complaint; instead she cited to another term of the lease requiring the landlord to maintain the safety of the areas and facilities, against which, she determined, a tenant's right to receive guests must be balanced.[4] The lease itself had not been made part of the complaint, and Edgewood does not contend that Carey had been given opportunity to argue her competing interpretation of the document as a whole before judgment was entered. More importantly, the judge clearly did not read the complaint as making the reasons for issuance of the barring notice irrelevant. She took particular note of the claim that Edgewood's motivation for the notice was, "to some degree," displeasure with "plaintiff's status as an

unmarried mother," and cited Carson's "documented violent past" and threatening behavior toward other tenants as "facts rebut[ting] the bold assertion that defendant's choice in barring Mr. Carson was ... a result of plaintiff's marital status." The judge thus recognized the importance of the facts surrounding the issuance of the barring notice. Edgewood's acknowledgment—with which we agree—that nothing filed previously in the case had warned Carey of the need to dispute those facts or face summary judgment demonstrates why the dismissal of the case at this stage was error.

### III.

■ In dismissing the claim of intentional infliction of emotional distress, the trial judge likewise relied on the information reflecting Carson's "volatile nature" and revealing him to be a "known risk[ ]" against whom Edgewood had a duty to protect its tenants. The dismissal therefore shares the defect already described of venturing beyond the framework of the complaint without necessary notice. Edgewood contends, however, that that error was harmless because even if the information about Carson is disregarded, Carey failed to plead facts that make out the intentional tort. We agree and, therefore, affirm the dismissal on that count.[5]

■ Liability for intentional infliction of emotional distress "will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 n. 10 (D.C.1994)). If that standard means what it says, then the conduct alleged must truly be extraordinary to hold a de-

---

4. "Nowhere," the judge explained, "does the lease state that defendant may not bar persons from the property who are known to be disruptive."

5. *See, e.g., Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982) (appellate court may affirm on ground not relied on by trial court).

fendant accountable for this tort. An example from the landlord-tenant setting where the evidence met the stringent test was our decision in *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929 (D.C.1995). There evidence was presented that the management had employed " 'workmen' to intimidate ... tenants" who were opposing the owners' endeavor to convert the apartment building to a condominium or co-op. *Id.* at 935. Tenants even testified to a pistol being brandished by a resident manager hired "to do the 'heavy work.' " *Id.* This evidence of "systematic efforts to harass and intimidate the tenants," we held, was " 'extreme and outrageous' behavior" well beyond "the prevailing norms of what is acceptable in society for property managers." *Id.* at 935, 936 (quoting *King v. Kidd,* 640 A.2d 656, 668 (D.C.1993)).

 Carey, of course, has not had the opportunity to prove her claim, and dismissal under Rule 12(b)(6) is proper only when "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Atkins v. Industrial Telecomms. Ass'n,* 660 A.2d 885, 887 (D.C.1995). Nevertheless, the allegations of the complaint must afford a basis for concluding that she *may* be able to prove conduct of the required enormity. Carey's allegations do not withstand the test. Giving her the benefit of all reasonable inferences, *Atkins, supra,* she alleged that Edgewood had purposely singled her out for exclusion of her guest because of its displeasure with her status as an unmarried mother, knowing (from her repeated objections) of the harm this could potentially inflict on her in the form of loss of custody of her children to the government while she was hospitalized.[6] We put aside to what extent her claim of invidious purpose is weakened by the complaint's admission that she herself

had originated the barring of Carson. We likewise do not consider Edgewood's claim that it could not be charged with the intentional tort for "resort[ing] to legal processes," *Bown v. Hamilton,* 601 A.2d 1074, 1079 (D.C.1992), in the sense of exercising its right to bar strangers from its property.[7] Even so, we could not sustain Carey's claim without holding that virtually any action by a landlord (or person with similar authority) motivated by discriminatory intent states a claim for intentional infliction of emotional distress. We decline to apply the tort that broadly. *Cf. Duncan v. Children's Nat'l Med. Ctr.,* 702 A.2d 207, 211 (D.C.1997) (affirming dismissal of intentional infliction claim against employer who put plaintiff to choice of "continu[ing] to ... work in the Blood Bank, where her fetus would be exposed to radiation, or to lose her job"). The trial court correctly dismissed that count of the complaint.

## IV.

 Finally, we sustain the trial court's dismissal of Carey's constitutional claims on the ground that Edgewood had not been shown to be a state actor.

 In general, neither the first nor the fifth amendment applies to actions of private persons. *Kelly v. United States,* 348 A.2d 884, 887 (D.C.1975) (citation omitted). Carey, however, argues that Edgewood as property manager was performing a " 'public function,' " *i.e.,* "the exercise by a private entity of powers traditionally exclusively reserved to the [s]tate," *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (citations omitted), because the Department of Housing and Urban Development had provided it with a federally subsidized mortgage for the property and with rent

6. Carey alleged that she was awaiting imminent hospitalization for delivery of a child.

7. *See Bean v. United States,* 709 A.2d 85, 86 (D.C.1998) (" 'Traditionally, the American law punishes persons who enter onto the property of another after having been warned by the

owner to keep off' ") (citation omitted). Carey responds that this ignores, among other things, *her* property and associational interests in not having invitees to her home excluded unjustifiably.

subsidy payments for Carey's unit. Assuming both of these assertions are true in fact, they nonetheless do not suffice to make Edgewood a state actor. "[M]ere receipt of government loans or funding by an otherwise private [entity] is not sufficient [government] involvement to trigger constitutional guarantees." *Greenya v. George Washington Univ.*, 167 U.S.App. D.C. 379, 384, 512 F.2d 556, 561 (1975). As one court has stated in a similar context, "We do not find HUD's involvement in [mortgage insurance] programs to be so pervasive as to warrant a finding that the challenged activity is in essence that of the government." *Hodges v. Metts*, 676 F.2d 1133, 1136 (6 th Cir.1982). Nor does the addition of rent subsidies to the equation provide the critical mass of government involvement necessary to warrant treating the private landlord's conduct "as that of the State [itself]." *Jackson*, 419 U.S. at 354, 95 S.Ct. 449. In general, cases have required a greater showing of "pervasive regulat[ion]" and "continuing involvement in the construction and operation" of the housing complex than this case exemplifies before state action will be found. *Male v. Crossroads Assoc.*, 469 F.2d 616, 621 (2d Cir.1972); *see also Lopez v. Henry Phipps Plaza South, Inc.*, 498 F.2d 937 (2d Cir. 1974). Whether "utilization of state eviction procedure," *Joy v. Daniels*, 479 F.2d 1236, 1239 (4 th Cir.1973), would tip the balance when combined with mortgage and rent subsidies is something we need not decide in this case, not involving eviction.[8]

*Affirmed in part and reversed in part; case remanded.*

---

**8.** Our holding on the constitutional claims likewise requires rejection of Carey's claim under 42 U.S.C. § 1983. *See Rendell–Baker v.* *Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).