Shoukoufeh **LARIJANI**, Appellant,

v.

**GEORGETOWN UNIVERSITY, and
Jane L. Blumenthal, Appellees.**

Nos. 00–CV–1583, 01–CV–153.

District of Columbia Court of Appeals.

Argued Dec. 11, 2001.

Decided Feb. 7, 2002.

Walter H. Madden, Rockville, MD, with whom Robert L. Bredhoff, Washington, DC, was on the brief, for appellant.

Alan S. Block, with whom Joseph S. Crociata, Washington, DC, was on the brief, for appellees.

Before SCHWELB, FARRELL, and REID, Associate Judges.

SCHWELB, Associate Judge:

On August 31, 2000, Shoukoufeh Larijani, a former employee of Georgetown University who worked at the library at the University's Medical Center, brought this action against her supervisor, Jane L. Blumenthal, and against the University, alleging intentional infliction of emotional distress. The defendants filed a motion to dismiss the complaint pursuant to Super. Ct. Civ. R. 12(b)(6), claiming that the complaint failed to state a claim upon which relief may be granted. On October 30, 2000, the motions judge granted the defendants' motion to dismiss, and on December 19, 2000, she denied Ms. Larijani's motion for reconsideration. Ms. Larijani appeals from both orders. We reverse the order of October 30, 2000, and dismiss as moot the appeal from the order denying reconsideration.

## I.

The principal allegations of the complaint have been summarized with reasonable accuracy in Ms. Larijani's brief:

Defendant Jane L. Blumenthal obtained two white colored, rectangular shaped, electrical devices, each approximately a foot in length, which, when activated, emitted a loud, static-sounding, piercing, humming and droning noise. Defendant Jane L. Blumenthal placed these two noise making devices immediately outside [Ms. Blumenthal's] office door, facing the plaintiff and within ten feet of plaintiff. (Complaint, ¶ 7–9)

Beginning in or about December 1997 and continuing through September 1998, defendant Jane L. Blumenthal activated these noise making devices so that they emitted their loud, static-sounding, piercing, humming and droning noise for every minute of every work day. Beginning in or about December 1997 and continuing through September 1998, plaintiff was forced to hear and to endure the loud, static-sounding, piercing, humming and droning noise of these noise making devices for every hour of every work day. (Id., ¶ 10, 11)

As a direct and proximate result of the above-described acts of defendants, plaintiff Shoukoufeh Larijani was caused to suffer severe and permanent injuries to mind and body including, but not limited to, severe headaches, chills, nausea, vomiting, a swollen eye, involuntary body tremors, nightmares, cold sweats, hysteria, tension, muscular pain, shoulder pain, backaches, hyperventilation, fear, anger, depression, loss of appetite, loss of sleep, anxiety, stress, humiliation, indignity, disgrace, a traumatized psyche, and extreme emotional distress. She was caused to undergo medical treatment for her physical and emotional injuries. (*Id.,* ¶ 20)

Plaintiff repeatedly requested and begged defendant Jane L. Blumenthal to turn the noise makers off, informing defendant Blumenthal that the constant noise was causing her severe injuries, as set forth above. Defendant Blumenthal refused to turn the noise makers off. When the plaintiff's repeated requests to turn off the noise makers were rejected by defendant Jane L. Blumenthal, plaintiff, seeking relief, contacted several managerial level agents of Georgetown University, including the managerial level agents in its Department of Human Relations, and informed defendant Georgetown University of the constant activation of the noise makers and the severe ill effects the constant noise was having upon her. Plaintiff requested that defendant Georgetown University take action to terminate the activation of the noise makers. Defendant Georgetown University took no action to terminate the use of the noise makers and thereby ratified and approved of the constant, continuous activation of the noise makers. (*Id.,* ¶ 12–14)

The relentless noise emanating from the two noise makers continued to bombard the plaintiff every day, all day long until September 1998. (*Id.,* ¶ 15)

The complaint thus fairly alleges that the "loud" and "piercing" noise made by these devices throughout the working day for a period of nine months was unbearable for Ms. Larijani, that it had serious deleterious effects upon the plaintiff's health, that the defendants were made aware of Ms. Larijani's physical and emotional injuries and of their cause, and that the defendants refused to take any corrective action.

The motions judge dismissed the complaint for failure to state a claim upon which relief may be granted. In the judge's view, "no juror could reasonably find that the daily use of annoying sound screen devices rises to the level of being so outrageous that it exceeds the boundaries of conduct usually tolerated by a decent society." These timely appeals followed.

## II.

A complaint may be dismissed for failure to state a claim upon which relief may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Owens v. Tiber Island Condo. Ass'n,* 373 A.2d 890, 893 (D.C.1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a Rule 12(b)(6) motion, "the complaint must be construed in the light most favorable to the plaintiff, and its allegations taken as true." *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979) (per curiam); *see also Abdullah v. Roach,* 668 A.2d 801, 804 (D.C.1995). The sufficiency *vel non* of the complaint raises a question of law, and we therefore owe no deference to the trial court and review the order of dismissal *de novo.* *Abdullah, supra,* 668 A.2d at 804. Taking Ms. Larijani's allegations as true, and construing the complaint in the light

most favorable to her, we cannot agree that Ms. Larijani would have been precluded from recovery under any state of facts which could have been proved in support of her claim. *See McBryde, supra,* 404 A.2d at 202.

To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984) (quoting *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 n. 10 (D.C.1994)). In general, "a case of intentional infliction of emotional distress is made out only if the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Homan, supra,* 711 A.2d at 818 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)). The question before us is whether an impartial jury could reasonably find that the defendants' conduct, as described by the plaintiff, and with all reasonable inferences drawn in the plaintiff's favor, was sufficiently outrageous to satisfy this concededly demanding standard.

We are constrained to answer this question in the affirmative. If the allegations of the complaint are true—if the noise made by the contraptions in question was indeed as loud, piercing, and unbearable as Ms. Larijani claims—and if the defendants continued to subject Ms. Larijani to these conditions for almost nine months, knowing that she had become seriously ill as a result, then a reasonable juror could surely find that the defendants had deliberately set out to torment Ms. Larijani, and that they had kept up this cruel treatment for a very long time. If this is truly what happened—if, however skeptical one may be of the veracity of the plaintiff's claims, one treats them as true for purposes of a Rule 12(b)(6) motion—then surely Ms. Larijani has satisfied the standards set forth in our cases.

Judges are supposed to use their common sense, and a disinterested reader might well raise an eyebrow and wonder whether Ms. Larijani's characterizations of her acoustical plight may be at least a little exaggerated. If, as the defendants seem to suggest, the devices were similar to the "hushers" in our trial courtrooms, then the mountain of which Ms. Larijani complains might, after all, be little more than a molehill. But the complaint in this case was dismissed on the basis of Ms. Larijani's pleading alone, and neither the trial judge nor the appellate court has seen the devices in question or heard the purported acoustical torture which they are alleged to have inflicted. If the case had proceeded to trial,[1] then the jury could have decided, perhaps with very little difficulty, whether this was an actionable case of deliberate torment by the defendants or a meritless series of exaggerations by a plaintiff who perceived persecution when none was present. Treating Ms. Larijani's allegations as true, however, as we must for purposes of the motion to dismiss, we do not see how anyone who has not heard the noise made by the devices in question

---

1. We do not mean to rule out the possibility that the case could be resolved by summary judgment if the judge could assess the noise.

can make an informed evaluation of Ms. Larijani's claim of outrage.[2] In our view, a reasonable person would indeed exclaim "Outrageous!" if the noise was as unbearable as the plaintiff claimed; if, as a result, her health suffered as badly as she alleged; and if the defendants, knowingly and callously, did absolutely nothing about it.

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*So ordered.*[3]

REID, Associate Judge, concurring:

I view this as a very, very close case. Ms. Larijani's complaint is quite "thin" regarding the elements of an intentional infliction of emotional distress claim. The matter comes to us, however, on a Super. Ct. Civ. R. 12(b)(6) motion to dismiss. Given the legal principles that govern our review of the denial of such motions, as identified by Judge Schwelb, I am compelled to agree that, in essence, Ms. Larijani's complaint is minimally sufficient to survive the motion to dismiss.

FARRELL, Associate Judge, dissenting:

The majority seems to agree, though I am not sure, that if the foot-length "noise makers" in this case were the conventional sort of "husher" or "white noise" maker employed in most courtrooms of the Superior Court, this suit would be meritless. But apparently because the devices might have been of a different, diabolical sort capable of inflicting "acoustical torture" over time—maybe a relic from Kafka's penal colony—the suit is allowed to go forward. Although Rule 12(b)(6) permits liberal pleading, I do not believe it is so loose a sieve as to let pass this example— one might say this parody—of a claim for intentional infliction of emotional distress.

That tort, as the majority purports to recognize, demands allegations of "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 n. 10 (D.C. 1994)). "If that standard means what it says, then the conduct alleged must truly be extraordinary to hold a defendant accountable for this tort." *Carey v. Edgewood Mgmt. Corp.,* 754 A.2d 951, 956 (D.C. 2000). And to survive a Rule 12(b)(6) motion, "the allegations of the complaint must afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity." *Id.* (emphasis deleted). In *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929 (D.C.1995), a claim was upheld where it was alleged and shown that the landlord's agent "repeatedly 'accidentally' dropped" or "brandished" a pistol in tenants' presence as part of systematic

---

**2.** If our dissenting colleague were to accept Ms. Larijani's allegations as true, rather than as an "off-chance," *post* at 46, he could not seriously suggest that her complaint of health destroyed by nine months of unbearable noise is a "parody," *post* at 45, of a claim for intentional infliction of emotional distress. At bottom, Judge Farrell simply refuses to believe Ms. Larijani. In our view, however, this approach does not square with the proper function of Rule 12(b)(6).

**3.** Ms. Larijani's status as an employee does not materially affect the sufficiency of her complaint. *See, e.g., King v. Kidd,* 640 A.2d 656, 673 (D.C.1993). This case is unlike *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624 (D.C.1997), which involved an allegedly unjustified demotion and other "employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." (Citation omitted.)

efforts to make them quit their apartments. *Id.* at 935. Now, evidently by extension, allegations that noise makers were beamed at an employee with similar intent to make her quit her job are considered enough to state a claim of conduct beyond all civilized norms. Sometimes common sense—or a sense for the ridiculous—should be enough for the court to say "no."

Never mind that no reason is alleged why supervisor Blumenthal wanted plaintiff to leave,[1] or that no other conduct besides installation of the noise makers made up the alleged "course of conduct" aimed at that result. And never mind that plaintiff does not allege she was denied permission or unable to move her work station farther away from the noise, and thus somehow held captive to it. *See Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211 (D.C.1997) (dismissal upheld where complaint did not allege employer "force[d employee] to remain in a situation where she would be exposed to radiation"). On the off-chance that the noise makers might have had the torturous capacity attributed to them—emitting a "loud, static-sounding, piercing" but at the same time "humming and droning" noise—and that Blumenthal might have used them as the instrument of a malicious purpose, the suit is allowed to go forward.

When applied to this intentional tort, with its proof requirements as severe as any in our law, Rule 12(b)(6) serves an important gatekeeping function which the majority disregards. Whether or not plaintiff could have alleged a case of negligent infliction of emotional distress, *see Williams v. Baker*, 572 A.2d 1062 (D.C. 1990) (en banc), it cheapens the currency of the tort she alleged to let this action proceed.

---

1. What this suit really reflects, though it does not want to allege it, is some sort of employer-employee conflict, and this court has been particularly unwilling "[i]n the employment context" to recognize suits for intentional infliction of emotional distress. *See Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C.1997). Compare the alleged conduct by plaintiff's supervisor with the conduct found insufficient as a matter of law in *Kerrigan*:

    In his complaint, Kerrigan alleges that Britches targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position. This conduct, even construed as true, was of the type attributable to "employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct."

    *Id.* at 628 (citation omitted).