Darrell BRYANT, et al., Plaintiffs,

v.

The ORKAND CORPORATION, et al., Defendants.

No. Civ. 03–2305(RJL).

United States District Court, District of Columbia.

March 21, 2005.

Jared Kenric Ellison, Donald M. Temple, Temple Law Office, Washington, DC, for Plaintiffs.

Alan D. Strasser, Kutak Rock LLP, Peter S. Smith, Sherri Evans Harris, United States Attorney's Office for the District of Columbia, Connie Nora Bertram, Karen L. Vossler, Venable, Baetjer, Howard & Civiletti, L.L.P., Washington, DC, John Gregory Kruchko, Kruchko & Fries, McLean, VA, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

LEON, District Judge.

[# 5, # 17, # 26]

Defendants, The Orkand Corporation ("Orkand"), Pinkerton Computer Consultants, Inc. ("PCCI"), and CEXEC, Inc. ("CEXEC") (collectively "contractors"), are contractors that hired the plaintiffs to provide computer support services to the United States Department of State ("State Department"). The plaintiffs, Darrell Bryant ("Bryant"), Jared Starvatow ("Starvatow"), and George Mathew ("Ma-

thew") allege that while working at the D.C. offices of the State Department they were subjected to discrimination, retaliation, sexual harassment, hostile work environment, and intentional infliction of emotional distress by the contractors and the State Department. Before the Court are the defendants' motions to dismiss.[1] For the following reasons, the Court GRANTS each motion to dismiss.

### ANALYSIS

### I. Standard of Review

 In order for a plaintiff to pursue a claim against a defendant, that plaintiff must have standing to sue the defendant. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To establish "the irreducible constitutional minimum of standing," the plaintiff must demonstrate that there was an injury-in-fact that is fairly traceable to the challenged conduct and that the injury can be redressed by a favorable decision by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

 If the Court determines that a claim is justiciable, it must then determine whether it has jurisdiction to hear the claim. The plaintiff has the burden of establishing the Court's jurisdiction. *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 19 (D.D.C.1998). When reviewing a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), the Court "must accept as true all material allegations of the complaint, and

must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501, 95 S.Ct. 2197. Where a motion to dismiss, however, presents a dispute over the factual basis of the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C.Cir.2000); *In re Swine Flu Immunization Prods. Liability Litig.*, 880 F.2d 1439, 1442–43 (D.C.Cir.1989).

 If the Court has jurisdiction to hear the claim, but the defendant moves pursuant to Rule 12(b)(6), the Court must determine whether the plaintiff has alleged sufficient facts in its complaint to state a cause of action. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept all well-pleaded facts as true. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). If, after reviewing the complaint, the Court finds "the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," the Court must dismiss the claim. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

### II. Standing Issues

 A fair reading of the Amended Complaint demonstrates that the plaintiffs seeking relief for violations pursuant to a law or legal principle are seeking to hold all defendants who allegedly violated that

---

1. On February 9, 2005, the Court entered an order granting PCCI's Motion to Sever. In that order the Court denied as moot the same defendant's motion to stay the time for filing a responsive pleading, thus PCCI has not filed a motion to dismiss.

In his opposition to CEXEC's motion to dismiss, Mathew conceded that Counts III, IV, and IX were time-barred and agreed to dismiss these claims against CEXEC.

In their opposition to Colin L. Powell's motion to dismiss, the plaintiffs conceded and agreed to dismiss Counts I, II and X against Secretary Powell.

law or legal principle jointly liable. Each of the plaintiffs, however, has standing to seek relief only from the contractor that hired him and, possibly, the State Department. In their oppositions to Orkand's and CEXEC's motions to dismiss, the plaintiffs concede as much by claiming that they are making claims only against their respective employers and the State Department. Bryant's Opp. at 7; Mathew Opp. at 8–9. Thus, for the sake of clarity and completeness, this Court dismisses for lack of standing any allegations by Bryant against CEXEC or PCCI, Starvatow against Orkand or CEXEC, and Mathew against Orkand or PCCI and turns to an analysis of the motions on a claim-by-claim basis.

## III. Title VII Claims (Counts VI, VII, VIII)

### A. Plaintiffs Cannot State a Claim Against Either Secretary Powell or the State Department Under Title VII

■ The United States has not waived sovereign immunity for Title VII actions brought by individuals who are not federal employees. 42 U.S.C. § 2000e–16. Indeed, our Circuit has held that only those individuals "in a direct employment relationship with a government employer" may maintain a suit against the government pursuant to Title VII. *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C.Cir.1979). Therefore, the initial issue before this Court is whether, for the purposes of Title VII, these plaintiffs are employees or independent contractors of the State Department. For the following reasons, the Court finds that the plaintiffs were independent contractors of the State Department and therefore are not eligible to sue under Title VII.

■ The analytical framework for determining whether an individual is an employee or an independent contractor is well-established. *Redd v. Summers*, 232 F.3d 933, 938–39 (D.C.Cir.2000); *Spirides*, 613 F.2d at 829. The Court must analyze "the economic realities of the work relationship" by "[c]onsider[ing] all of the circumstances surrounding" it. *Spirides*, 613 F.2d at 831. The threshold question is whether the defendant had a right to control the means and manner of the worker's performance. *Redd*, 232 F.3d at 938; *Spirides*, 613 F.2d at 831–32. In addition, however, the Court must also consider four other factors: (1) the intent of the parties, (2) whether using government contractors is justifiable as a prudent business decision, (3) the client's control over the work, and (4) whether the relationship has attributes commonly found in arrangements with independent contractors or employees. *Redd*, 232 F.3d at 939–40. The plaintiffs are not successful under any factor.

■ As to the threshold question, the Court finds that the State Department did not have the right to control the means and manner of the workers' performance. An employer controls the means and manner of an employee's performance if that employer can control and direct "the result to be achieved ... [and] the details by which that result is achieved." *Redd*, 232 F.3d at 938 (internal quotation marks omitted). Based on the information provided by the parties, the State Department did neither. Although the State Department provided each contractor with a Task Order or a Statement of Work, which established expectations about what tasks were to be completed and what was necessary to complete them, each document also explained, with specificity, the duties or responsibilities that were assigned to the contractors. Benson Decl. Exs. 1.1, 1.2.,

1.3.[2] Moreover, even though the State Department provided supervisors or task managers to each project, each contractor also provided an on-site project manager to supervise its own employees. Benson Decl. ¶¶ 6, 13, 20. Thus, even if the State Department retained control over the companies with whom it contracted, it did not control the contractors' employees, nor did it evaluate the performances of those employees. Benson Decl. ¶¶ 9, 16, 23. Accordingly, the Court concludes that the State Department did not control the means and manner of the plaintiffs' work, and therefore the plaintiffs were not employees, within the meaning of Title VII.

A consideration of the factors outlined in *Redd* additionally supports the conclusion that the plaintiffs were not employees of the State Department. First, the facts do not support a conclusion that the parties intended the plaintiffs to be employees of the State Department. In the complaint each plaintiff alleges that he was *employed* by a government contractor and *assigned* to work at the State Department. Am. Compl at 3.[3] Moreover, there were no employment contracts between the State Department and the plaintiffs, and a fair reading of the documents that establish the relationship between the State Department and the contractors does not demonstrate that an employer-employee relationship was created between the State Department and the contractors' personnel.[4] Therefore, there is no support for the contention that the State Department intended to create an employer-employee relationship with the plaintiffs. Accordingly, this factor weighs in favor of treating the plaintiffs as independent contractors.

Second, the facts support a conclusion that contracting out the systems work was a justifiable and prudent business decision. In making this determination, the Court must consider whether the State Department was required to supervise the contractors' work, whether the work required special skills, and whether the work is an integral part of the client's business. *Redd*, 232 F.3d at 939. The Court recognizes that the various computer-related tasks contracted for by the State Department require technical skills. Moreover, it is apparent from the record that State Department employees provided some supervisory role to these plaintiffs. Bryant Decl. ¶ 4; Starvatow Decl. ¶¶ 3, 5; Mathew Decl. ¶ 4. But, it is not unreasonable for the State Department to supervise contractors, and thus their employees, who are *supporting* the work of the Bureau of Consular Affairs. Moreover, the technical

2. Among the responsibilities identified were that the contractors "shall provide personnel who are available for shift work," Benson Decl. Ex. 1.2, "shall ... provide the technical expertise necessary," Benson Decl. Ex. 1.3, and "shall provide network support services," Benson Decl. Ex. 1.1.

3. The Court recognizes that plaintiffs filed declarations in support of their opposition to Secretary Powell's motion that state they were co-employees of their respective employers and the State Department. This appears to be an effort to amend their complaint to support their contention, and the Court will not consider it because it is inconsistent with the allegations in the complaint.

4. In the Orkand Task Order, there is no mention of personnel, rather the order outlines the contractor's responsibilities. Benson Decl. Ex. 1.1. The CEXEC Statement of Work states that "[c]ontractor personnel employed on this contract shall possess the required skills and knowledge for their designated labor category...." Benson Decl. Ex. 1.3. And, most clearly, the PCCI Statement of Work states that "[i]ndependently and not as an agent of the Government, the contractor shall furnish qualified personnel as needed by [the Consular Systems Division] to fulfill the requirements for professional services." Benson Decl. Ex. 1.2.

services provided by the contractors are "not inherently governmental and are not an integral part of the provision of consular services overseas...." Benson Decl. ¶¶ 4, 11, 18. Accordingly, this factor weighs in favor of treating the plaintiffs as independent contractors.

Third, the Court must determine "whether the business is exercising a degree of control that seems excessive in comparison to a reasonable client-contractor relationship in the same circumstances." *Redd*, 232 F.3d at 939. In making this determination, the Court must consider whether the State Department furnishes the plaintiffs with the equipment and workspace used to complete their tasks and the manner in which the relationship was terminated. Here, the plaintiffs worked on-site at the State Department, which "furnish[ed] a phone, computer equipment, pager, and office space to facilitate their responsibilities." Benson Decl. ¶¶ 8, 15, 22. But, while the State Department retained the right to request that any of the contractors' employees be removed from a State Department task, each contractor retained the authority to effect the plaintiffs' terminations from that contractor's employment. Benson Decl. ¶¶ 9, 16, 23. In this case, each of the plaintiffs was "terminated from the State Department at the request of State Department employees." Bryant Decl. ¶ 16, Starvatow Decl. ¶ 15, Mathew Decl. ¶ 15. Therefore, the Court finds that the State Department did exercise some control over the contractors' employees, but finds that that control is reasonable given the client-contractor relationship. Accordingly, this factor weighs in favor of treating the plaintiffs as independent contractors.

█ And, fourth, the Court finds that the relationship between the plaintiffs and the State Department "shares attributes commonly found in arrangements with independent contractors," rather than employees. *Redd*, 232 F.3d at 940. The factors considered in this analysis are the duration of the plaintiffs' employment, from whom the plaintiffs received their paychecks, whether leave was afforded to them, whether they accrued retirement benefits from the State Department, and whether the State Department paid social security benefits for them. *Id.* The contractors provided the plaintiffs with leave time and paid their salaries and social security taxes. Benson Decl. ¶¶ 7, 14, 21. The plaintiffs did not accrue federal retirement benefits as part of their employment. *Id.* But, the plaintiffs' work hours and leave were approved and monitored by the State Department. Bryant Decl. ¶¶ 6, 7, 19, 20; Starvatow Decl. ¶¶ 7, 8, 18; Mathew Decl. ¶¶ 6, 7, 17, 18. Finally, the range of tenure with the State Department ranges from nine months to four years. Bryant Decl. ¶ 18 (more than two years); Starvatow Decl. ¶ 17 (nine months); Mathew Decl. ¶ 16 (four years). Considering this information, the Court finds that the attributes of these plaintiffs' work relationship with the State Department leans in favor of them being independent contractors.

Considering the various factors delineated by our Circuit, this Court finds that there is insufficient support to establish that these plaintiffs were employees of the State Department, within the meaning of Title VII. Accordingly, Secretary Powell's motion to dismiss Counts VI, VII, and VIII is granted for lack of subject matter jurisdiction.

**B. Plaintiffs Failure to Exhaust Their Administrative Remedies Prevents Them From Stating a Claim Against Their Employers**

█ Title VII requires any person complaining of violations by non-federal

employers under that title to file an administrative complaint with the EEOC. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995). The Supreme Court has held that filing a complaint with the EEOC is a requirement for filing a civil suit under Title VII that is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Therefore, the Court finds that in order to state a claim pursuant to Title VII, each plaintiff has the burden of establishing in his complaint that he exhausted his administrative remedies. Bryant and Mathew did not.

### 1. Orkand

Bryant has not alleged any facts to demonstrate that he has filed an EEOC complaint regarding the allegations contained in the Amended Complaint. Bryant has alleged that he filed a complaint with the Office of Equal Employment Opportunity at the State Department. Am. Compl at 5–6. This, however, does not satisfy his obligation to file a complaint with the EEOC. *Zipes*, 455 U.S. at 393, 102 S.Ct. 1127. Accordingly, this Court finds that Bryant failed to state a claim for Title VII violations and dismisses Counts VI, VII, and VIII against Orkand.

### 2. CEXEC

Likewise, Mathew fails to allege any facts in the complaint to demonstrate that he filed a complaint with anyone, much less the EEOC. Instead, Mathew alleges that he "met with [employees] of the State Department Office of Equal Employment Opportunity and Civil Rights." Am. Compl. at 11. In his opposition to CEXEC's motion to dismiss, Mathew claims that he "filed a formal complaint of discrimination with the State Department's

Office of Equal Employment Opportunities and Civil Rights on February 27, 2003." Mathew Opp. at 9. Even if the Court could consider this fact, which it cannot because Mathew did not allege it in the complaint, *Thomas v. City Lights School, Inc.*, 124 F.Supp.2d 707, 712 n. 3 (D.D.C.2000), this filing would not satisfy his obligation to file a complaint with the EEOC. *Zipes*, 455 U.S. at 393, 102 S.Ct. 1127. Accordingly, this Court finds that Mathew has failed to state a Title VII claim and dismisses Counts VI and VIII against CEXEC.

## IV. Intentional Infliction of Emotional Distress (Count X)

### A. Mathew's Action Against CEXEC is Time–Barred

■ The Court lacks subject matter jurisdiction to hear Mathew's claims against CEXEC for intentional infliction of emotional distress. The statute of limitations for a claim for intentional infliction of emotional distress is three years. D.C.Code Ann. § 12–301(8). But, "[t]o the extent that plaintiff's emotional distress claim ... is intertwined with [his] hostile work environment claim[,] ... it assumes the hostile work environment claim's one-year limitations period." *Thompson v. Jasas Corp.*, 212 F.Supp.2d 21, 27 (D.D.C. 2002) (internal quotation marks omitted). Although Mathew argues that his intentional infliction of emotional distress claim is not "inextricably intertwined" with his D.C. Human Rights Act claims, this Court finds that the claim is based on the discriminatory and hostile work environment claims and the one-year limitations period applies. As Mathew has already conceded that his claims subject to a one-year statute of limitations are time-barred, this claim is likewise untimely.[5] Accordingly,

---

**5.** The original complaint was filed on November 6, 2003, and Mathew's termination, which

was the last possible event causing Mathew to

this Court lacks subject matter jurisdiction over Mathew's intentional infliction of emotional distress claim and dismisses Count X against CEXEC.[6]

### B. Bryant Has Failed to State a Claim Upon Which Relief Can Be Granted

To state a claim for intentional infliction of emotional distress, the plaintiff must state sufficient facts to show it would be able to prove: "(1) extreme and outrageous conduct [by the defendant] which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Ben–Kotel v. Howard Univ.*, 156 F.Supp.2d 8, 15 (D.D.C.2001) (internal quotation marks omitted); *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C.2002). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks omitted). Orkand's conduct that allegedly caused Bryant's emotional distress included, failing to act on complaints alleging sexual harassment and discrimination, Am. Compl. at 5, removing Bryant from a position as a desktop support specialist, Am. Compl. at 5, instituting disciplinary proceedings that were later discontinued, Am. Compl. at 5, treating Bryant differently than similarly situated Caucasian employees with regard to absences from work, Am. Compl. at 5, and threatening Bryant with termination. Am. Compl. at 6. Although this alleged conduct may have caused Bryant emotional distress, none of it rises to the level of "outrageous or ex-

treme conduct" justifying relief. *See, e.g., King v. Kidd*, 640 A.2d 656, 670 (D.C.1993) (finding that a supervisor's failure to respond to complaints about sexual harassment does not amount to extreme or outrageous conduct); *Hoffman v. Hill & Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991) (holding that employer who intentionally interfered with an employee's ability to do his job and then dismissed him did not amount to extreme or outrageous conduct). Accordingly, this Court finds that Bryant has failed to state a claim for intentional infliction of emotional distress and Count X is dismissed against Orkand.

### V. Section 1981 Claims Against CEXEC

Finally, Mathew alleges that CEXEC's decision to terminate him was racially motivated, and he seeks to recover for violations of § 1981. In the complaint, Mathew alleges that CEXEC "terminated [him] at the request of the State Department." Am. Compl. at 11. Because the Court finds that this is a subjective reason, not involving racial animus, for CEXEC's decision to terminate Mathew, there are no facts in, or inferences that can be drawn from, the complaint that would allow Mathew to state a viable claim under § 1981. Accordingly, this Court dismisses Count I against CEXEC.

### ORDER

For the reasons set forth above, it is this *21*[st] day of March, 2005 hereby

**ORDERED** that Defendant CEXEC Inc.'s Motion to Dismiss Amended Com-

---

file his complaint, occurred on November 5, 2002. Therefore, this claim is time-barred.

**6.** Even if the court did have subject matter jurisdiction over this claim, Mathew still

would not survive a motion to dismiss because the conduct he complains of does not state a claim upon which relief can be granted.

plaint [# 5] is **GRANTED**, and it is further

**ORDERED** that the Motion to Dismiss by Defendant The Orkand Corporation [# 17] is **GRANTED**, and it is further

**ORDERED** that Federal Defendant Colin L. Powell's Motion to Dismiss [# 26] is **GRANTED**.

**SO ORDERED.**